UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORRALES LAW PC, a California professional corporation; MANUEL CORRALES, JR., a California resident, <br><br> Plaintiffs, <br><br> v. <br><br> EQUAL ACCESS JUSTICE FUND LP, a Delaware limited partnership, et al., <br><br> Defendants. | Case No.: 25-CV-1834 JLS (MMP) <br><br> **ORDER (1) DENYING PLAINTIFFS' MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND (2) SETTING BRIEFING SCHEDULE FOR PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> (ECF No. 2) |

Presently before the Court is Plaintiffs Corrales Law PC ("CLPC") and Manuel Corrales, Jr.'s Motion for Emergency Temporary Restraining Order and Preliminary Injunction ("Mot.," ECF No. 2). Defendants Equal Access Justice Fund LP, B.E. Blank Company LP, BEB Partners LLC, and Benjamin E. Blank have not opposed the Motion. Having reviewed the Motion, Plaintiffs' Complaint ("Compl." ECF No. 1), and the law, the Court **DENIES** Plaintiffs' Motion for Emergency Temporary Restraining Order, and **SETS** a briefing schedule for Plaintiffs' Motion for Preliminary Injunction.

///

# BACKGROUND

Pro se Plaintiff Manuel Corrales, Jr. is a San Diego-based lawyer who has been representing the California Valley Miwok Tribe ("CVMT") in a number of legal disputes for over a decade. Compl. ¶¶ 11, 13. Corrales alleges that, as a result of his longstanding representation of CVMT, he is owed several million dollars in previously earned legal fees that have been unrealized for various reasons. *Id.* ¶ 11. That large unrealized balance, according to Corrales, has driven interest from third-party financiers to offer Corrales loans to cover legal expenses in exchange for a share of the proceeds. *Id.* ¶¶ 11–12.

One such third-party financier was B.E. Blank Company LP ("BEBC"), a Delaware limited partnership run by Benjamin E. Blank. *Id.* ¶¶ 6, 8. BEBC is also a general partner of Equal Access Justice Fund LP ("EAJF"). *Id.* ¶ 6. Corrales alleges that he sought funding from Mr. Blank and BEBC in August 2021, ultimately resulting in the execution of a loan agreement on August 16, 2021 (the "Loan Agreement"). *Id.* ¶ 12; *see also id.*, Ex. A ("Agreement"). Under the Loan Agreement, which contained an aggregate ceiling of $700,000, Mr. Blank and BEBC agreed to loan Corrales funds on an as-needed basis to cover legal expenses. Agreement at 36.[1] In return, Corrales was obligated to share 50% of his attorneys' fees to pay down the loan. Compl. ¶ 12. The outstanding balance under the Loan Agreement was also subject to what Corrales describes as an "excessive interest rate[] in violation of California usury laws." *Id.* ¶ 26.

BEBC was apparently not the only funding company that offered Corrales money. Separately, Corrales alleges that he received a $200,350 advance from a firm called U.S. Claims on May 17, 2018. *Id.* ¶ 13. That 2018 advance was, according to Corrales, tied to a specific case in which he sought recovery of funds on behalf of CVMT. *Id.* However, Corrales alleges that repayment of the 2018 advance was contingent upon his success in the matter to which the advance pertained. *Id.* In the event he did not prevail on the CVMT lawsuit, Corrales claims that he would not owe U.S. Claims anything. *Id.*

---

[1] Pin citations refer to the CM/ECF numbers electronically stamped at the top of each page.

    For several reasons—including the fact that he did not prevail in the CVMT lawsuit—Corrales alleges that he was not responsible for repaying U.S. Claims anything at all despite an accrued interest balance of over $500,000. *Id.* Nevertheless, U.S. Claims allegedly filed a lien with the California Secretary of State in the amount of $518,650, which Defendants then paid off under the Loan Agreement. *Id.* Corrales challenges the enforceability of the U.S. Claims lien, and in turn, avers that Defendants wrongfully created a liability on Corrales's behalf of over $500,000 by paying off the lien. *Id.* ¶¶ 13–14. According to Corrales, EAJF has since commenced a JAMS arbitration pursuant to the Loan Agreement to collect on the debts it believes Corrales owes, namely the U.S. Claims lien repayment. *Id.* ¶ 32. But Corrales believes the Loan Agreement is unenforceable in its entirety for several reasons, including, *inter alia*, the Loan Agreement's contravention of the California Rules of Professional Conduct and the exorbitant interest rates applicable under the Loan Agreement. *Id.* ¶¶ 22, 25–27. That belief led Corrales to file this lawsuit, seeking a declaration of rights and injunctive relief under California's Unfair Competition Law. *See generally* Compl.

    Corrales filed the Complaint on July 18, 2025, and that same day, he filed the instant Motion asking this Court to enjoin the JAMS arbitration that commenced in March of this year. *See* Mot. at 9; *see also* ECF No. 1, Ex. 1 ("JAMS Arb."). Corrales's basic contention is that the Loan Agreement is void and unenforceable as contrary to public policy, and consequently, the arbitration provision therein is similarly unenforceable. Mot. at 5–10. Filed alongside the Motion was a Proof of Service in which a process server declared that the Complaint and Motion were served on EAJF's counsel by email the same day those documents were filed. *See* ECF No. 4 ("Proof of Service").

## LEGAL STANDARD

    Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Worker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). A plaintiff seeking preliminary

injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and is "never awarded as of right." *Id.* at 22, 24.

When a plaintiff has not provided notice of their TRO application to the defendant, Federal Rule of Civil Procedure 65(b)(1) imposes additional requirements. Namely:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed . . . by Rule 65[] on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted).

"Courts have [thus] recognized very few circumstances justifying the issuance of an *ex parte* TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an *ex parte* TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized 'a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.2d at 322). Generally

speaking, this "narrow band" includes only situations wherein an *ex parte* order is necessary "to preserve evidence or the court's jurisdiction." *Am. Can Co.*, 742 F.2d at 323 n.11 (citing *In re Vuitton et Fils S.A.*, 606 F.2d 1, 3, 5 (2d Cir. 1979) (per curiam)).

## DISCUSSION

Plaintiffs' Motion focuses entirely on the *Winter* factors. In so structuring their arguments, Plaintiffs ignore "the threshold question that arises anytime a party seeks a restraining order *ex parte*: have Plaintiffs presented an adequate justification for failing to give notice to the Defendant?" *Adobe Sys., Inc. v. S. Sun Prods., Inc.*, 187 F.R.D. 636, 638 (S.D. Cal. 1999). While Plaintiffs indicate that they served the Complaint and Motion upon EAJF's counsel by email through a process server, *see* Proof of Service, at present there is no proper proof of service that complies with the ordinary service of process rules under Federal Rule of Civil Procedure 4. *See Palm St. Cap. LLC v. Xie*, No. 22-cv-01932-NC, 2022 WL 22855264, at *1 (N.D. Cal. June 1, 2022) (recognizing that electronic service of process may only be permitted "when supported by an appropriate factual record" as an alternative means of service under Cal. Civ. Proc. Code § 413.30). Nor is there any proof of service whatsoever that confirms service of the Complaint and Motion upon the other three Defendants—BEBC, Mr. Blank, or BEB Partners LLC. *See generally* Docket. As explained in analogous situations, "service by email does not constitute formal service designed to ensure notice even in the context of an ex parte application for a TRO." *SDLA Courier Serv., Inc. v. City Cap. NY LLC*, No. 2:24-cv-08115-MRA-E, 2024 WL 4868278, at *3 (C.D. Cal. Sept. 24, 2024) (collecting cases). Accordingly, the Court "declines to assume the alleged notice was offered, let alone, adequate." *See MG Pharmacy LLC v. Cardinal Health 110 LLC*, No. CV-21-01747-PHX-SPL, 2021 WL 6845294, at *1 (D. Ariz. Oct. 15, 2021); *see also Globalization Partners, Inc. v. Layton*, No. 19-cv-01990-BAS-LL, 2019 WL 5268657, at *2 (S.D. Cal. Oct. 16, 2019) ("Because there is no proof of service or other documentation reflecting that service was completed, it is unclear whether Defendant received notice of this proceeding. Hence, for purposes of this Order, the Court assumes

Defendant was not provided notice of the instant application and construes Plaintiff's application as a request to issue the TRO without providing notice to Defendant.").

Plaintiffs argue that they will suffer irreparable harm in the absence of a TRO, Mot. at 2, but "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n*, 452 F.3d at 1131. "For example, an ex parte TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quotation omitted). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.2d at 322). This "narrow band" generally includes only situations when an *ex parte* order is necessary "to preserve evidence or the court's jurisdiction." *Am. Can Co.*, 742 F.2d at 323 n.11 (citation omitted).

Here, Plaintiffs contend that Corrales "will be required to travel to Delaware and oppose Defendants' claims in arbitration" in the face of an invalid arbitration provision. Mot. at 10. As Plaintiffs see it, that travel, coupled together with the "strong possibility" that the arbitrator will reach a different conclusion on the merits than this Court, constitutes irreparable harm. *Id.* (citing *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016)). However, Plaintiffs cite no authority supporting granting an unnoticed TRO in this context. Nor have Plaintiffs shown that this case falls into the "very narrow" category of cases where *ex parte* orders are proper. *See Globalization Partners, Inc.*, 2019 WL 5268657, at *2 (holding that the plaintiff's attempted service of the TRO negated any claim that notice would frustrate the prosecution of the plaintiff's case). Indeed, the cost of defending an arbitration is typically not adequate to yield irreparable harm for purposes of obtaining temporary injunctive relief, particularly when the plaintiff can be made economically whole from the arbitration proceeding itself. *See Jones v. Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO*, No. CV13-3015-GHK (JPRx),

2013 WL 5539291, at *4 (C.D. Cal. July 24, 2013) (denying petition for temporary injunction to enjoin an arbitration in the absence of a "showing that the Arbitration Defendants are experiencing financial hardship"). And the mere possibility that a federal court may grant more favorable relief than that of an arbitrator is generally not an adequate ground for availing oneself of the emergency procedures of a district court when comparable emergency relief is available in the arbitration. *See Smart Techs. ULC v. Rapt Touch Ireland Ltd*, 197 F. Supp. 3d 1204, 1205 (N.D. Cal. 2016); *see also T-Mobile USA Inc. v. Verity Wireless Inc.*, No. 2:21-cv-00733-RAJ-BAT, 2021 WL 4295845, at *1 (W.D. Wash. July 22, 2021) (discussing the emergency relief procedures of JAMS Rule 2(c)). Accordingly, Plaintiffs have failed to demonstrate irreparable harm, thus obviating the need to reach the other *Winter* factors. *See Prime Grp., Inc. v. Dixon*, No. 2:21-CV-00016-RAJ, 2021 WL 1664007, at *7 (W.D. Wash. Apr. 28, 2021) ("A failure to establish one of the *Winter* prongs is fatal to a motion for temporary injunctive relief." (citing *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018))).

Although Plaintiffs do not expressly request an order to show cause why a preliminary injunction should not issue, the Court will set a briefing schedule that allows Defendants the minimum time to respond as prescribed by this Court's Civil Local Rules. *See MG Pharmacy*, 2021 WL 6845294, at *1 (exercising the Court's discretion "to expedite briefing and advance a hearing on Plaintiff's request for a preliminary injunction").

## CONCLUSION

In light of the foregoing, the Court **ORDERS** as follows:

1. Plaintiffs' request for an *ex parte* TRO is **DENIED**.

2. Plaintiffs **SHALL SERVE** Defendants with: (1) the Complaint, (2) the Motion for Emergency Temporary Restraining Order and Preliminary Injunction, and (3) a copy of this Order. Plaintiffs **SHALL FILE PROOF OF SERVICE** within five (5) days of the date of this Order.

3.   Defendants **SHALL FILE** any opposition or statement of non-opposition <u>on or before August 12, 2025</u>.  Plaintiffs **MAY FILE** a reply <u>on or before August 19, 2025</u>.  The Court warns the Parties that a failure to oppose any motion may constitute consent to granting the motion under Civil Local Rule 7.1(f)(3)(c).

4.   A hearing on Plaintiffs' Motion for Preliminary Injunction is **SET** for <u>Thursday, September 25, 2025, at 9:00 a.m.</u> in Courtroom 4D of the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA, 92101.

**IT IS SO ORDERED.**

Dated:  July 22, 2025

Hon. Janis L. Sammartino
United States District Judge