Manuel Corrales, Jr. SBN 117647
Attorney at Law
11939 Rancho Bernardo Road, Suite 170
San Diego, CA 92128
Tel: (858) 521-0634/Fax: (858) 521-0633
Email: mannycorrales@yahoo.com

Attorney for Plaintiff
CORRALES LAW PC, and In Pro Per

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORRALES, LAW PC., a California Professional Corporation; MANUEL CORRALES, JR., a California Resident,<br><br>　　Plaintiffs,<br><br>　　vs.<br><br>EQUAL ACCESS JUSTICE FUND LP, a Delaware Limited Partnership; B.E. BLANK COMPANY LP, a Delaware Limited; BEB PARTNERS LLC, a limited liability corporation; BENJAMIN E. BLANK, a Florida Resident,<br><br>　　Defendants. | Case No. 25CV1834 JLS MMP<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　　September 25, 2025<br>Time:　　9:00 a.m.<br>Courtroom:　4D<br>Judge:　　Hon. Janis L. Sammartino |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I. BECAUSE THE ENTIRE LOAN AGREEMENT IS VOID AND ILLEGAL AS AGAINST PUBLIC POLICY, THE ARBITRATION PROVISION IS UNENFORCEABLE ........................................................................... 1

II. PLAINTIFFS HAVE ESTABLISHED THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ............................................................................... 5

III. PLAINTIFFS DID NOT AND COULD NOT <u>WAIVE</u> THE ILLEGALITY OF THE LOAN AGREEMENT .............................. 6

IV. THE CLAIMS AGAINST THE OTHER NON-EAJF DEFENDANTS ARE PROPER ................................................................ 8

V. THE INTEREST RATES UNDER THE LOAN AGREEMENT ARE IN VIOLATION OF CALIFORNIA USURY LAWS .......................................................... 8

VI. THE LOAN AGREEMENT IS NOT SUPPORTED BY ADEQUATE CONSIDERATION ...................................................... 9

VII. PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF ............................................................................. 10

VIII. THE BALANCE OF EQUITIES WEIGH IN PLAINTIFFS' FAVOR .................................................................................. 10

IX. A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST ............................................................................................ 11

X. CONCLUSION ....................................................................................... 11

# TABLE OF AUTHORITIES

Am. Express Co. v. Italian Colors Restaurant
    (2013) 570 U.S. 228, 235..................................................................................8

American National Bank v. A.G. Sommerville
    (1923) 191 Cal. 364, 371 ...............................................................................7

Atschul v. Sayble
    (1978) 83 CA3d 153, 163-164 .......................................................................2

California State Council of Carpenters v. Superior Court
    (1970) 11 CA3d 144.................................................................................4, 10

Downey Venture v. LMI Ins. Co.
    (1998) 66 CA4th 478, 511..............................................................................7

Franklin v. Nat. C. Goldstone Agency
    (1949) 33 Cal.2d 628, 632 .............................................................................4

Gibbs v. Sequoia Capital Ops
    (4th Cir. 2020) 966 F.3d 286, 292..................................................................8

Hollywood State Bank v. Wilde
    (1945) 70 CA2d 103......................................................................................7

Hooper v. Barranti
    (1947) 81 CA 570, 576..................................................................................3

Loving & Evans v. Blick
    (1949) 33 Cal.2d 603, 610 .............................................................................4

McIntosh v. Mills
    (2004) 121 CA4th 333, 346.......................................................................2, 3

Moncharsh v. Heily & Blasé
    (1992) 3 Cal.4th 1 ...........................................................................1, 3, 4, 10

Neubauer v. Goldfarb
    (2003) 108 CA4th 47, 55-57 .........................................................................8

Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co
    (2018) 6 Cal.5th 59 ....................................................................................1, 4

Stockton Morris Plan Co. v. California Tractor & Equipment Corp
    (1952) 112 CA2d 684, 689............................................................................3

Wells v. Comstock
    (1956) 46 Cal.2d 528, 532 ........................................................................7

WRI Opportunity Loans II LLC v. Cooper
    (2007) 154 CA4th 525, 533...................................................................7


## OTHER AUTHORITIES

1 Witkins, Summary of Cal. Law (10th ed. 2005) Contracts, §419, page 460 .............3

Cal. Bus. & Prof. Code §17200, et seq .........................................................6, 8

Cal. Constitution, Article XV, §1...................................................................9

CC §1550 ....................................................................................................3

CC §1598 ....................................................................................................3

CC §1608.....................................................................................................2

Plaintiffs CORRALES LAW PC ("CLPC") and MANUEL CORRALES, JR., ("Corrales") submit the following reply to the opposition filed by Defendants EQUAL ACCESS JUSTICE FUND LP ("EAJF"), B.E. BLANK & COMPANY LP ("BEBC"), BEB PARTNERS LLC ("BEBP"), and BENJAMIN E. BLANK ("Blank"):

**I.**

**BECAUSE THE ENTIRE LOAN AGREEMENT IS VOID AND ILLEGAL AS AGAINST PUBLIC POLICY, THE ARBITRATION PROVISION IS UNENFORCEABLE**

The Defendants argue that the arbitration provision in the subject Loan Agreement is valid and enforceable, even if the Loan Agreement is invalid, because the arbitration provision can be severed from the Loan Agreement. (Def. PAs, page 5). Specifically, Defendants contend that even assuming the Loan Agreement is an illegal fee sharing agreement with a non-lawyer in violation of California State Bar rules, the arbitration provision is not otherwise affected, citing Moncharsh v. Heily & Blasé (1992) 3 Cal.4th 1, and Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co. (2018) 6 Cal.5th 59. This contention is without merit and misconstrues California law.

The Loan Agreement is illegal and void. It clearly requires Plaintiffs to share their attorney's fees with non-lawyers, contrary to Defendants' assertions. It requires Plaintiff CLPC, a law corporation, to share 50% of its attorney's fees collected from its clients, and Plaintiff Corrales, an attorney, to guarantee that fee-sharing arrangement, contrary to California State Bar rules prohibiting a lawyer to share fees with a nonlawyer or a nonlawyer entity. (Page 11 of Loan Agreement). The Loan Agreement defines "Law Firm Proceeds" that Plaintiffs are to pay under the Loan Agreement as "gross revenues received by Borrower in connection with its legal services," including "services rendered in connection with litigation" pursuant to a contingency, hourly, flat-fee, or other payment agreement …" (Page 5 of Loan Agreement). Indeed, the "Term Sheet" summarizing the basic core terms drafted by Defendant Benjamin Blank stated:

> "The law firm [CLPC] will pay the Financier [EAJF] a minimum of **50% of the attorney's fees** and reimbursed expenses received on encumbered legal matters until the principal and interest of the credit facility [$700,000 loan] are fully repaid." (Emphasis added).

(Ex. "3" to Complaint, page 2 of "term Sheet," dated August 10, 2021).

---

PLAINTIFF'S MOTION FOR EMRGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION           1

This cannot be anything other than attorney's fees, no matter how much Defendants try to downplay it in their opposition papers. Indeed, the Loan Agreement requires that the Defendants be given access to Plaintiff CLPC's client trust account, so that it may withdraw Plaintiff CLPC's fees directly from its client trust account. (Page 35 of Loan Agreement). This is a separate violation of the California State Bar rules but shows that the intent and purpose of the Loan Agreement was to share Plaintiffs' attorney fees in violation of California State Bar Rules. Cal. Rules of Prof. Conduct 5.4(a). Notably, the attached emails from Defendant B.E. Blank & Company show that Defendant B.E. Blank & Company was illegally seeking to collect these fees from Plaintiff CLPC together with Defendant EAJF under a joint and collective scheme. (Decl. Corrales Reply, Ex. "1" and "2"). The Loan Agreement also contains a "confidentiality" clause designed to hide this illegal fee sharing arrangement. (Page 45). Accordingly, there is overwhelming evidence that the Loan Agreement was in fact an <u>illegal</u> fee sharing agreement between a California lawyer and nonlawyers and thus void as against public policy.

      Under California law, the State Bar Rules of Professional Conduct, including the prohibition of a lawyer sharing a fee with a non-lawyer, "are not only ethical standards to guide the conduct of members of the Bar; but they also serve as an expression of public policy to protect the public." <u>Atschul v. Sayble</u> (1978) 83 CA3d 153, 163-164. As a result, the subject Loan Agreement which requires Plaintiffs as California lawyers to share their fees with the Defendant EAJF, and indirectly with the Blank companies, all of whom are non-lawyers, is an illegal and unenforceable contract in violation of public policy. <u>See</u> <u>McIntosh v. Mills</u> (2004) 121 CA4th 333, 346 (fee-sharing agreement between lawyer and non-lawyer private investigator was illegal, because it violated State Bar Rules and was against public policy).

      There is no legal basis to ignore the illegality of the entire Loan Agreement and separate out the arbitration provision. Under California law, the arbitration provision is void if the entire Loan Agreement is illegal. For example, CC §1608 provides:

> "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, <u>the entire contract is void</u>." (Emphasis added).

---

PLAINTIFF'S MOTION FOR EMRGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION     2

Thus, where the illegal consideration goes to the whole promise, the entire contract is illegal. 1 Witkins, Summary of Cal. Law (10th ed. 2005) Contracts, §419, page 460.  The object of the Loan Agreement was also unlawful, i.e., its purpose was to illegally share attorney's fees with a nonlawyer as payment for a loan with exorbitantly high interest rates, and thus violates CC §1598 which provides:

> "Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." (Emphasis added).

Thus, the Loan Agreement is illegal, because it conflicts with express public policy prohibiting attorney fee sharing with non-lawyers. CC §1550 (essential elements of a contract include having a lawful purpose).  As a result, the entire Loan Agreement is void from its inception, including the arbitration provision. See, e.g., Stockton Morris Plan Co. v. California Tractor & Equipment Corp. (1952) 112 CA2d 684, 689 (a county supervisor unlawfully bought a machine in the name of a county agency, and the Plaintiff finance company took an assignment of the installment contract from the seller. Plaintiff's action to recover amount paid for the assignment was denied, because Plaintiff knowingly participated in the illegal transaction and aided in carrying out the illegal objective); McIntosh, supra.  Moreover, because the illegal Loan Agreement is the foundation of Defendant EAJF's claims in arbitration or elsewhere if it chooses, Defendant EAJF cannot establish its claim for a share of Plaintiffs' fees without showing that it has broken the law, and the "courts will not assist it, whatever its claim of justice may be upon the Plaintiffs" as Respondents in the JAMS arbitration proceeding. Hooper v. Barranti (1947) 81 CA 570, 576 (Plaintiff cannot rely upon an illegal transaction to establish his case); Stockton Morris Plan Co., supra.

      The case of Moncharsh, supra, cited by Defendants supports Plaintiffs' position on this issue and is contrary to the Defendants' claim that the arbitration provision may still be enforced notwithstanding the illegality of the Loan Agreement as a whole.  As the court in Moncharsh, supra, observed:

> If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement.  Thus,

> if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether. (Citing authorities).

3 Cal.4th at 29.  In <u>California State Council of Carpenters v. Superior Court</u> (1970) 11 CA3d 144, cited in <u>Moncharsh</u>, supra, the Court, likewise observed:

> Our courts have held that the basis of the arbitral authority is a legal contract, and that a contract wholly illegal in its inception can confer no jurisdiction on arbitrators to enforce the contract terms (Citing <u>Loving & Evans v. Blick</u> (1949) 33 Cal.2d 603, 610, and <u>Franklin v. Nat. C. Goldstone Agency</u> (1949) 33 Cal.2d 628, 632).
>
> In <u>Loving & Evans v. Blick</u>, supra, the court said, at page 610: "[T]he power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.]  In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights…."

11 CA3d at 156-157.

The case of <u>Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing, inc</u>. (2018) 6 Cal.5th 59, also cited by Defendants, likewise does not help Defendants.  It is inapposite on its facts.  There, the Court refused to enforce an illegal attorney fee agreement that purported to allow the law firm to engage in concurrent representation of two clients without their written consent.  It held the engagement agreement unenforceable as against public policy but left open the law firm being able to seek recovery of its fees under the equitable doctrine of quantum meruit as an alternative to contractual recovery. 6 Cal.5th at 87-88.  Here, the Defendants are not seeking recovery in the JAMS arbitration of any legal fees under a quantum meruit theory.  Nor can they, because they are nonlawyers and the Loan Agreement would be an illegal foundation for them to do so.  They seek no recovery of loan payments under any equitable theories as an alternative to a contractual recovery.  They seek only a percentage of Plaintiffs' attorney fees collected on litigated cases.  Thus, while California law permits <u>lawyers</u> to seek recovery of their legal fees on quantum meruit theories, where their fee agreement is otherwise void for violating the State Bar Rules, no such facts are present in this case.  The entire Loan Agreement is void and unenforceable, barring the

Defendants as classic loan sharks from enforcing it to collect 50% of Plaintiffs' attorney's fees to pay down an illegal loan.

To this end, Defendants argument that Plaintiffs must adjudicate their claims in arbitration pursuant to the subject Loan Agreement is circular and assumes without supporting authority that the Loan Agreement is valid and enforceable. As shown, it is not. Accordingly, the Defendants' contention that the Loan Agreement contains a "valid and enforceable arbitration provision" must be rejected.

## II.
## PLAINTIFFS HAVE ESTABLISHED THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

Plaintiffs seek equitable relief from this Court declaring that the subject Loan Agreement is void and unenforceable in its entirety as against public policy. As a result, the arbitration provision contained therein is also void and unenforceable. They seek injunctive relief enjoining Defendants from pursuing the pending arbitration at JAMS in New York and/or Delaware to enforce the Loan Agreement requiring Plaintiffs to share their fees with Defendants to pay down the loan.

Plaintiffs are likely to prevail in their claims for declaratory and injunctive relief, because the subject Loan Agreement is clearly an illegal fee sharing agreement, as pointed out above. In addition, the Loan Agreement <u>lacks consideration</u>, because Defendants mistakenly paid off a U.C.C. lien which a prior funding company (U.S. Claims) filed with the California Secretary of State for funding on a case Corrales pursued for the California Valley Miwok Tribe, but lost. (Ex. "2," page 3 of Disclosure Statement, attached to Complaint). Under the nonrecourse funding agreement with this prior funding company, Corrales was not obligated to reimburse or pay back that funding. (Ex. "4" to Complaint). Yet, the prior funding company would not remove its U.C.C. lien which Defendants mistakenly believed had to be paid off and Defendants paid it. By doing so, Defendants resurrected an obligation Corrales did not have and made it a part of the loan to CLPC, not to Corrales personally. U.S. Claims advanced no litigation funding to CLPC. Indeed, it never existed prior to the August 2021 Loan Agreement. Since Corrales lost the Miwok Tribe case, he owed U.S. Claims nothing on the $200,000 advanced funding, which grew to $518,650 by August 2021, when

Defendants purportedly paid it off.  Thus, there was no valid consideration for purporting to loan CLPC $700,000, and disbursing CLPC only $77,000 in loan proceeds.

      As alleged in the Complaint, the Defendants were engaged in an **unlawful** business practice in California under Cal. Bus. & Prof. Code §17200, et seq.  They sought, and continue today to seek, to share attorney's fees as part of hard money loan sharking practices throughout the state of California.  Attached to the declaration of Manuel Corrales, Jr., are various emails showing the Defendants' efforts and actions to collect a portion of Plaintiffs' attorney's fees earned on their cases.  In addition, Defendant B.E. Blank & Company LP ("BEBC") sent Plaintiffs an email dated July 3, 2025, entitled "Summer Quarterly Brief."  In this email, BEBC states that it will be, among other places, in San Diego, California, at the Rancho Bernardo Inn in October 2025, for an attorney seminar/conference called "Law-De-Gras," stating: "Our team always enjoys the opportunity to connect in-person and we hope we can sit down with you soon."  BEBC, like other funding companies, actively seeks business from lawyers at these lawyer seminars, including in California, and usually sets up a "booth" with literature and BEBC people who can sign people up for fee-sharing loans.

### III.
### PLAINTIFFS DID NOT AND COULD NOT <u>WAIVE</u> THE ILLEGALITY OF THE LOAN AGREEMENT

      Defendants argue that Plaintiffs waived any claim that the Loan Agreement was an illegal fee sharing agreement with a non-lawyer in violation of California State Bar rules and public policy. (Def. PAs, page 8).  They point to language in the Loan Agreement to that affect that purports to provide that CLPC as the principal borrower and Corrales as the guarantor "waived" any claims that that the Loan Agreement was void and unenforceable, and "expressly waived any right to bring any private cause of action or any suit of any nature against the Lender in connection with any alleged violation of any Disciplinary Rules." (Def. PAs, page 8 [Citing §5.12(a)-(b) of Loan Agreement]).  This contention is without merit and contrary to California law prohibiting the waiver of illegal contracts.

      As a general rule, "[b]ecause an illegal contract is void, it cannot be ratified by any subsequent act, and no person can be estopped to deny its validity. [Citations].

---

PLAINTIFF'S MOTION FOR EMRGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION      6

Similarly, the **defense of illegality <u>cannot be waived</u>** by stipulation in the contract. [Citations]." 1 Witkins, Summary of Cal. Law (10th ed. 2005) Contracts, §432, page 473-474; <u>Wells v. Comstock</u> (1956) 46 Cal.2d 528, 532; <u>Downey Venture v. LMI Ins. Co</u>. (1998) 66 CA4th 478, 511 (quoting text in Witkins).  For example, in <u>Hollywood State Bank v. Wilde</u> (1945) 70 CA2d 103, the Court concluded that a provision in a contract to sell investments of chinchillas was an illegal securities transaction voiding the contract and rejected the defendants' claim that plaintiff waived its illegality and was therefore barred from introducing evidence of its illegality.  It then stated:

> When … the relations of the parties to a transaction are illegal and against public policy the court will deny relief based upon their contract.

70 CA2d at 112.  It then remarked that under this rule:

> [A] party may not "by stipulation at the time of the execution thereof or afterward, waive his right to urge the illegality in any action thereon instituted by the other party thereto." (quoting <u>American National Bank v. A.G. Sommerville</u> (1923) 191 Cal. 364, 371).

<u>Ibid</u>.  The Court further stated:

> The contracts being void by virtue of having been executed and assigned contrary to public policy and statute, all attempts to validate and vitalize them by **<u>inserting a waiver of such defense are likewise voidable</u>** for the same reason. (Emphasis added).

<u>Ibid</u>. at 114.

The rule against a waiver of the defense of an illegal contract also applies to <u>guarantors</u>. <u>Wells v. Comstock</u> (1956) 46 Cal.2d 528, 533 ("since the principal obligation of the contract is unenforceable because of illegality, the guaranty too is unenforceable"); <u>WRI Opportunity Loans II LLC v. Cooper</u> (2007) 154 CA4th 525, 533 (holding that guarantors as a matter of public policy could not waive the defense of illegal usury in loan contract).

Here both CLPC, the named borrower, and Corrales, the named guarantor under the Loan Agreement, did not and could as a matter of law waive their defense that the Loan Agreement is an illegal fee sharing agreement with non-lawyers in violation of California State Bar rules and thus void as against public policy. <u>Wells</u>, supra; <u>Wilde</u>,

---

PLAINTIFF'S MOTION FOR EMRGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                    7

supra; cf. also Neubauer v. Goldfarb (2003) 108 CA4th 47, 55-57 (concluding that a waiver of corporate directors' and majority shareholders' fiduciary duties to minority shareholders in private close corporations is against public policy and contract provision in a buy-sell agreement purporting to effectuate such a waiver is void).  Similarly, in the context of arbitration agreement, the prospective waiver doctrine invalidates agreement that prospectively waive a party's right to pursue statutory remedies in certain circumstances. See Am. Express Co. v. Italian Colors Restaurant (2013) 570 U.S. 228, 235.  Indeed, such a waiver renders an agreement unenforceable because it violates public policy. Gibbs v. Sequoia Capital Ops. (4th Cir. 2020) 966 F.3d 286, 292.

## IV.
## THE CLAIMS AGAINST THE OTHER NON-EAJF DEFENDANTS ARE PROPER

Defendants argue that the naming of the other non-EAJF defendants is inappropriate, because they are not named parties under the Loan Agreement. However, the Complaint clearly names them as "persons" under Cal. Bus. & Prof. Code §17200 et seq. who engaged, and are presently engaging, in an unlawful business practice here in California, to wit: soliciting and contracting with California lawyers to share in their fees in violation of California State Bar rules.  Defendant EAJF is nothing more than a pooled investment hedge fund used by the non-EAJF entities controlled by Benjamin Blank to fund California litigation lawyers in exchange for a percentage of their attorney fees.  The attached emails and newsletter from the Blank company confirm this.

## V.
## THE INTEREST RATES UNDER THE LOAN AGREEMENT ARE IN VIOLATION OF CALIFORNIA USURY LAWS

Defendants argue that the Loan Agreement cannot be void for violation of usury laws, because under Delaware law "there are no limits on interest rates for loans over $100,000." (Def. PAs, page 10).  However, this assumes that the Loan Agreement is valid, which if it is then Delaware law applies.  The contract was entered into in California and the property Defendants seek to acquire, i.e., Plaintiffs' fees earned are in California.  Since neither Defendant EAJF nor Defendant BEBC (B.E. Blank Company) are a licensed bank or lending institution in California, none of the usury law

PLAINTIFF'S MOTION FOR EMRGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                                   8

exemptions apply to them. They are subject to California's usury laws charging interest on loans for other than personal, family, or household purposes, i.e., the higher of (1) 10% or (2) 5% plus the Federal Reserve Bank of San Francisco's rate on the 25th day of the month preceding the earlier of the date the contract was contracted for or was executed. Cal. Constitution, Article XV, §1.

Here, the interest rate charged under the Loan Agreement exceed California' usury law. Nowhere in the Loan Agreement does it state what interest rate is being charged. (See §2.2 of Loan Agreement: "Each Loan shall bear interest at a rate per annum equal to the Interest Rate from the Closing Date …"). It is unclear how Defendants calculated interest on the loan, but it clearly exceeds 10% per annum. At 10% per annum for three years, the accrued interest on the $600,000 claimed loan would be $60,000 per year or $180,000 for three years. Yet, Defendant EAJF alleges in its Complaint in arbitration that the amount owed is $1,273,224.82 (page 6 of Arbitration Complaint), which amounts to $673,224.80 in claimed accrued interest or $493,224 more than $180,000 at 10% for three years. Since the Loan Agreement does not disclose the interest rate to be charged, by extrapolation, the amount appears to be $493,224 more than the permitted interest rate in California and thus is usury.

## VI.
**THE LOAN AGREEMENT IS NOT SUPPORTED BY ADEQUATE CONSIDERATION**

Defendants do not address Plaintiffs' claims of lack of consideration to support the Loan Agreement, other than to say CLPC received $77,000 from the purported $700,000 loan. But even that misses the point. The point is that Corrales only requested a loan for $200,000, but Defendants informed Corrales that he needed to first set up a professional corporation and borrow $700,000, so that the U.S. Claims' U.C.C. lien could be paid off. But, as stated, US Claims had no valid U.C.C. lien, or any lien at all, because the $200,000 in funds US Claims advanced to Corrales for the Miwok Tribe case were **nonrecourse**, and, because Corrales lost that case, he had no obligation to pay back those funds. As a result, Defendants' "pay-off" of the US Claims "lien" in the amount of $505,000 (the $200,000 with accrued interest) was not an obligation Corrales ever legally had to begin with. Moreover, Defendants purported to pay off an obligation Corrales allegedly personally had and converted it into an obligation for CLPC. In short,

PLAINTIFF'S MOTION FOR EMRGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION    9

Defendants resurrected a dead nonrecourse obligation Corrales never had into an obligation for CLPC. Since the US Claims' lien was never CLPC's legal obligation, the Loan Agreement with CLPC is not supported by valid and legal consideration.

## VII.
## PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF

Since the Loan Agreement was void at its inception, for the reasons stated above, Plaintiffs will be irreparably harmed if forced to go through the expense and time of arbitration in Delaware or New York, when the arbitration provision is void. Defendants' contention that Plaintiffs bargained for arbitration in Delaware and therefore can vindicate their rights there is the same circular argument they make concerning the alleged validity of the Loan Agreement. If the Loan Agreement is void, there is no reason to force Plaintiffs to arbitrate, especially in Delaware.

Moreover, there is the danger that if Defendants obtain an arbitration award against Plaintiffs in Delaware, Plaintiffs will be severely disadvantaged in challenging the award in a Delaware court where Corrales is not admitted. Instead, Plaintiffs would have to hire legal counsel in Delaware at great expense. And since an arbitration award is binding, Plaintiffs' chances of appealing any award are limited. Defendants will then have the award confirmed and seek to register it in California as a judgment and pursue collection against Corrales personally, since he is a guarantor on the Loan Agreement, thus forcing him into bankruptcy. Defendants do not address these issues at all, other than to continue to argue in a conclusory fashion that the Loan Agreement is not illegal and void against public policy.

## VIII.
## THE BALANCE OF EQUITIES WEIGH IN PLAINTIFFS' FAVOR

Defendants argue that Plaintiffs "admit that they would rightfully lose on the merits in said arbitration," in opposition to Plaintiffs' "balance of equities" assertion. They contend that Plaintiffs "freely and voluntarily" entered into the Loan Agreement and because of that Plaintiffs should be required to let the arbitrator decide Plaintiffs' defenses to the Loan Agreement. Again, this misses the point and is circular. If the

PLAINTIFF'S MOTION FOR EMRGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION       10

Loan Agreement is void, Plaintiffs cannot be forced to arbitrate. California State Council of Carpenters, supra; Moncharsh, supra.

As stated in Plaintiffs' motion, Defendants' only interest is in collecting an illegal debt based on high interest rates, a questionable loan amount and based on an illegal fee sharing agreement with a non-lawyer, and therefore the equities tip in favor of Plaintiffs.

## IX.
## A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

The "public interest is served by compliance" with the law and "is served from the proper process itself." E. Bay Sanctuary Covenant, 9th Cir. 2020) 950 F.3d 1242, 1280. Here, public policy in enjoining illegal fee sharing agreements with non-lawyers is served. In addition, public policy is served in enjoining agreements charging exorbitant and illegal interest rates and loan sharking. The California Bar is served by prohibiting loan sharks from preying upon struggling and desperate lawyers trying to survive and serve their clients.

Denying an injunction would not be in the public interest, because illegal fee sharing agreements will go undeterred.

## X.
## CONCLUSION

For the foregoing reasons, and for the reasons stated in their motion, the Court should preliminarily enjoin the arbitration proceeding pending resolution of this federal action. Plaintiffs are likely to succeed on the merits of their case.

Dated: August 18, 2025     _____
                            Manuel Corrales, Jr., Esq.,
                            Attorney for Plaintiff
                            CORRALES LAW PC, and In Pro Per

*Corrales Law PC, et al. v. Equal Access Justice Fund LP*
Case No. 25CV1834 JLS MMP

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I, the undersigned, whose address is 11939 Rancho Bernardo Road, Suite 170, San Diego, California 92128, certify:

That I am, and at all times hereinafter mentioned was, more than 18 years of age and not a party to this action;

That on August 18, 2025, I served the within: **REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** on all interested parties in said action: **SEE ATTACHED SERVICE LIST**

[ ]   (VIA U.S. MAIL or ~~UPS OVERNIGHT~~)  I placed [ ] the original [] a true copy thereof enclosed in a sealed envelope(s) addressed as stated on the attached mailing list and placing such envelope(s) with first class postage fees, thereon fully prepaid, in the United States Mail at San Diego on this date following ordinary business practices.

[ ]   (BY CERTIFIED MAIL)  I placed [ ] the original [ ] a true copy thereof enclosed in a sealed envelope(s) addressed as stated on the attached mailing list and placing such envelope(s), certified mail, return receipt requested postage thereon fully prepaid, in the United States Mail at San Diego on this date following ordinary business practices.

[X]   (BY ELECTRONIC TRANSMISSION)  I transmitted a true copy thereof via electronic transmission on all interested parties to the action for immediate delivery to SEE ATTACHED SERVICE LIST.

[ ]   (PERSONAL SERVICE) Personally served/Delivered to the addressed stated on the attached mailing list via DLS Attorney Service.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated: August 18, 2025                                              */s/ Carianne Steinman*
                                                                    Carianne Steinman

PROOF OF SERVICE                                                                            1

**Service List**

1. Joseph Lehnert
   Stephanie Scott
   Keating Muething & Klekamp LLP
   One East Fourth St., Suite 1400
   Cincinnati, Ohio 45202
   Phone : (513) 639-3964 Fax : (523) 579-6457
   Email : sscott@kmklaw.com
   Email : jlehnert@kmklaw.com

   *Attorney for Defendants Equal Access Justice Fund LP*