UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORRALES LAW PC, a California professional corporation; MANUEL CORRALES, JR., a California resident,<br><br>Plaintiffs,<br><br>v.<br><br>EQUAL ACCESS JUSTICE FUND LP, a Delaware limited partnership, et al.,<br><br>Defendants. | Case No.: 25-CV-1834 JLS (MMP)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>(ECF No. 2) |

Presently before the Court is Plaintiffs Corrales Law PC and Manuel Corrales, Jr.'s (collectively, "Plaintiffs") Motion for Emergency Temporary Restraining Order and Preliminary Injunction ("Mot.," ECF No. 2), which was filed on July 18, 2025. On July 22, 2025, the Court denied Plaintiffs' request for an Emergency Temporary Restraining Order. *See* ECF No. 5. On August 12, 2025, Defendant Equal Access Justice Fund LP filed an Opposition to Plaintiffs' Motion ("Opp'n," ECF No. 13), and on August 18, 2025, Plaintiffs filed a Reply ("Reply," ECF No. 16). Pursuant to Civil Local Rule 7.1(d)(1), the Court finds this matter appropriate to decide on the papers without oral argument. Having reviewed the Parties' briefs, the evidence, and the law, the Court **DENIES** Plaintiffs'

Motion for Preliminary Injunction.

## BACKGROUND

Pro se Plaintiff Manuel Corrales, Jr. is a San Diego-based lawyer who has been representing the California Valley Miwok Tribe ("CVMT") in a number of legal disputes for over a decade. Compl. ¶¶ 11, 13. Corrales alleges that, as a result of his longstanding representation of CVMT, he is owed several million dollars in previously earned legal fees from the Tribe that have been unrealized for various reasons. *Id.* ¶ 11. That large unrealized balance, according to Corrales, has driven interest from third-party financiers to offer Corrales loans to cover his legal expenses in exchange for a share of the proceeds. *Id.* ¶¶ 11–12.

One such third-party financier is Defendant Equal Access Justice Fund LP ("EAJF"). According to David Childers, Portfolio Manager for Defendant B.E. Blank & Co. LP ("BEBC"), EAJF "is a limited partnership . . . that extends financing to lawyers and law firms like Plaintiffs Manuel Corrales and Corrales Law P.C." Declaration of David Childers ("Childers Decl.") ¶¶ 2, 4, ECF No. 13-1. BEBC, for context, is a Delaware-based limited partnership, which is one of EAJF's partners.[1] *Id.* ¶¶ 3, 4.

On August 16, 2021, Corrales Law PC ("CLPC") entered into a loan agreement (the "Loan Agreement") with EAJF for the extension of a credit facility not to exceed $700,000. *See* ECF No. 2-1, Ex. A ("Agreement") at 17, 26.[2] The Loan Agreement provided for an initial advance of $600,000 from EAJF to CLPC, with additional advances available under certain conditions. *Id.* at 26. In exchange, CLPC agreed to a repayment schedule that was tied to the law firm's proceeds; each month CLPC was responsible to repay no less than 50% of its monthly proceeds, with possible escalations in the event CLPC's debt

---

[1] Also named as Defendants are Benjamin E. Blank and BEB Partners LLC. Mr. Blank is, per Mr. Childers, a manger of BEB Partners LLC, which is a general partner of both EAJF and BEBC. Childers Decl. ¶¶ 5–6. Given the direction this Order takes, the only relevant Defendant whose role is essential to understand is EAJF.

[2] Pin citations refer to the CM/ECF numbers electronically stamped at the top of each page.

obligations grew. *Id.* at 27. CLPC also executed a Direction of Proceeds, with $505,000 of the advance directed to pay off a U.S. Claims lien, $18,000 directed to cover various service fees, and the $77,000 remainder directed to a CLPC bank account. Childers Decl. ¶¶ 11–12. Joining CLPC on the Loan Agreement as guarantor was Mr. Corrales. Agreement at 17, 62.

The U.S. Claims lien relates to a previous, independent advance Corrales allegedly received from a firm called U.S. Claims. Compl. ¶ 13. As acknowledged in their Complaint, Plaintiffs allege that Corrales received a $200,350 advance from U.S. Claims on May 17, 2018, which was tied to a specific case in which Corrales sought recovery of funds on behalf of CVMT. *Id.* However, Plaintiffs allege that repayment of the 2018 advance was contingent upon CVMT's success in the matter to which the advance pertained. *Id.* In the event he did not prevail in the CVMT lawsuit, Corrales claims that the U.S. Claims lien should be extinguished, thus leaving him on the hook for nothing at all. *Id.*

For several reasons—including the fact that he did not prevail in the CVMT lawsuit—Plaintiffs allege that Corrales was not responsible for repaying U.S. Claims anything despite an accrued interest balance of over $500,000. *Id.* ¶ 13. Nevertheless, U.S. Claims allegedly filed a lien with the California Secretary of State in the amount of $518,650, which Defendants then paid off under the Loan Agreement. *Id.* Plaintiffs' basic contention in the instant suit is that the U.S. Claims lien was unenforceable, and in turn, Defendants wrongfully created a liability on Corrales's behalf of over $500,000 by paying off the lien. *Id.* ¶¶ 13–14. But beyond the alleged unenforceability of the lien, Plaintiffs further believe the Loan Agreement is unenforceable in its entirety for several reasons, including, *inter alia*, the Loan Agreement's contravention of the California Rules of Professional Conduct and the exorbitant interest rates applicable under the Loan Agreement. *Id.* ¶¶ 22, 25–27. That belief led Corrales to file this lawsuit on July 18, 2025, seeking a declaration of rights and injunctive relief under California's Unfair Competition Law. *See generally* Compl.

This action, however, lags an earlier-filed arbitration. From EAJF's perspective, Plaintiffs have defaulted on their repayment obligations under the Loan Agreement, the maturity date of which was August 16, 2024. Childers Decl. ¶ 15. By March 3, 2025, EAJF maintained that the Loan Agreement was enforceable, and that Plaintiffs remained jointly and severally responsible for repaying over $1.2 million. *Id.* ¶ 16. Accordingly, pursuant to an arbitration provision in the Loan Agreement, EAJF filed a Demand for Arbitration against Plaintiffs with JAMS, and that arbitration remains ongoing to this day. *Id.* ¶¶ 17–19.

Plaintiffs filed the instant Motion on July 18, 2025, seeking to enjoin the arbitration proceeding pending resolution of this action. Mot. at 1. Citing Plaintiff's failure to demonstrate the requisite irreparable harm necessary to justify an award of injunctive relief on an ex parte basis,[3] the Court declined to issue a temporary restraining order. *See* ECF No. 5 at 6–7. But the Court went on to set a briefing schedule for Plaintiff's request for a preliminary injunction to allow Defendants an opportunity to be heard. *Id.* at 7. The Motion is now fully briefed and ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although a plaintiff seeking a preliminary injunction must make a showing on each element, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

---

[3] Although Plaintiffs filed a Proof of Service indicating the Complaint and Motion were served on EAJF's counsel by email, ECF No. 4, the Court declined to accept service by email as sufficient in the context of an ex parte motion, ECF No. 5 at 5.

1131–35 (9th Cir. 2011). Under this approach, a court may issue a TRO or preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted). Generally, a TRO or preliminary injunction is considered "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

## DISCUSSION

### I.     Likelihood of Success on the Merits

While the arguments in Plaintiffs' Motion are varied, they all revolve around one general concept: demonstrating that the Loan Agreement is unenforceable. Plaintiffs strive to achieve that goal by attacking the Loan Agreement on multiple grounds. As Plaintiffs see it, the Loan Agreement is invalid and unenforceable in its entirety for the following reasons: (1) the Loan Agreement is an unlawful fee-sharing agreement under California Rule of Professional Conduct 5.4(a), (2) the Loan Agreement is unlawful because Plaintiffs' clients did not consent in writing to the purported fee-sharing agreement, (3) the Loan Agreement is unlawful for charging usurious interest rates that are inconspicuously scattered throughout the contract, and (4) the Loan Agreement is void and invalid for lack of consideration. Plaintiffs further contend that Defendants' practice of entering into similar engagements with other attorneys violates California's Unfair Competition Law.

Defendants rebut each of these claims in turn, but they also raise several threshold arguments beginning with the Loan Agreement's arbitrability. Section 11.15 of the Loan Agreement, they say, provides for mandatory JAMS arbitration for any claims arising out of the Agreement. Because Plaintiffs have not challenged the arbitration provision specifically, Defendants argue that the merits of this case should be decided in the first instance by an arbitrator. As a separate threshold issue, Defendants contend that EAJF is the only proper Defendant in this action and that no valid claims could possibly exist

against the non-EAJF Defendants.

The Court agrees with Defendants that this case likely belongs in arbitration, and that is enough to conclude that injunctive relief is improper. *See Trump v. CASA, Inc.*, 606 U.S. ___, 145 S. Ct. 2540, 2561–63 (2025) (staying a preliminary injunction based on a threshold issue, independent of the strength of the underlying merits). The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts. *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991). Reflected in the FAA are both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In deciding whether a case is properly arbitrable, courts must generally "determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Courts generally resolve those issues by "apply[ing] ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also* 9 U.S.C. § 2. If the answer to both questions is yes, a court must enforce the agreement and compel arbitration. *See, e.g.*, *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Doubts regarding the scope of an agreement must be resolved in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).

"[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Under this so-called severability principle, "unless the challenge is to the arbitration [or delegation] clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Coinbase, Inc. v. Suski*, 602 U.S. 143,

150 (2024) (alteration in original) (quoting *Buckeye*, 546 U.S. at 445–46).  Put differently, "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (emphasis in original).

Plaintiffs' challenges to the Loan Agreement appear more likely to go toward the validity and enforceability of the Agreement than they do the existence of the Agreement, thus precluding this Court as a proper venue for asserting Plaintiffs' claims.  Section 11.15(a) of the Loan Agreement provides:

> This section concerns the resolution of any controversies or claims between the parties, whether arising in contract, tort, by statute, or otherwise, including but not limited to controversies or claims that arise out of or relate to (i) this Agreement, (ii) any Loan Document, or (iii) the transactions contemplated hereby or thereby (collectively a "*Claim*").  THE PARTIES IRREVOCABLY AND VOLUNTARILY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARITES ENTERING INTO THIS AGREEMENT.

Agreement at 57–58.  The Loan Agreement, in section 11.15(b), then provides:

> Any and all Claims arising out of or relating in any way to this Agreement or any other Loan Document or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement or any other Loan Document shall be submitted to final and binding arbitration before Judicial Arbitration and Mediation Services, Inc. ("JAMS").

*Id.* at 58.  Taken together, these two provisions unmistakably establish that the Loan Agreement contemplates mandatory JAMS arbitration as the exclusive venue for dispute

resolution, with minor exceptions not relevant here.[4]

That much goes undisputed by Plaintiffs. Instead, they take aim at an assortment of other, unrelated provisions in the Loan Agreement that they contend render the Loan Agreement, as a whole, unlawful and unenforceable. Thus, in Plaintiffs' view, "it follows that the arbitration provision contained in the Loan Agreement is likewise void." Mot. at 10. Plaintiffs advance this syllogism, however, without citing any authority and without grappling with any federal substantive law.

The issue with Plaintiffs' position, as Defendants point out, is that Plaintiffs' claims "are primarily challenges to the loan-related portions of the Loan Agreement . . ., not the arbitration-related portions." Opp'n at 5. As the Supreme Court has consistently held, "the basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-A-Center*, 561 U.S. at 71 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). This distinction was laid down in *Prima Paint*, where the Court held, in considering whether a contract was fraudulently induced, that a federal court may properly consider a challenge when "the claim is fraud in the inducement of the arbitration clause itself," whereas "the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint*, 388 U.S. at 403–04. In that latter scenario, the challenge shall first be directed to an arbitrator. *Id.*

Like *Prima Paint*, this case involves challenges to the Loan Agreement generally rather than challenges to the arbitration clause specifically. For instance, Plaintiffs contend that, because the Loan Agreement ties the repayment schedule to CLPC's proceeds, the Loan Agreement violates California's ethical rules. This is a challenge to the Loan Agreement generally, not to the arbitration clause. Plaintiffs also argue that the Loan

---

[4] As an example of one exception, section 11.15(d) of the Loan Agreement allows a party seeking emergency injunctive relief to file suit in state or federal court in New Castle County, Delaware pending the appointment of an arbitrator. Agreement at 59. That section is inapposite here, however, based upon Defendants' unopposed representation that JAMS appointed an arbitrator on June 9, 2025, more than one month before Plaintiffs filed suit. *See* Childers Decl. ¶ 19.

Agreement imposes usurious interest rates. That, too, has no legally relevant connection to the arbitration clause. Finally, Plaintiffs maintain that the Loan Agreement is void and invalid for lack of consideration. But to the extent that argument is directed to the arbitration clause specifically, the proposition is foreclosed by Ninth Circuit precedent. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (concluding that a "promise to submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration"). And to the extent that argument is directed to other provisions of the Loan Agreement or to the Loan Agreement as a whole, the arbitration clause remains severable under controlling law. *See Rent-A-Center*, 561 U.S. at 70–71.

In their Reply, Plaintiffs fail to so much as acknowledge *Prima Paint* and its progeny, instead relying on two California Supreme Court opinions that purportedly authorize this Court to address Plaintiffs' claims of illegality. *See* Reply at 3–4 (first citing *Moncharsh v. Heily & Blasé*, 832 P.2d 899 (Cal. 1992); and then citing *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1 (Cal. 2018)). Neither case supports Plaintiffs here. Contrary to Plaintiffs' characterization, the *Moncharsh* court expressly acknowledged that when "the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains arbitrable." 832 P.2d at 917 (collecting cases). Thus, that court held that "the legality of the fee-splitting provision was a question for the arbitrator in the first instance." *Id.* Similarly, while *Sheppard* did indeed reinforce the concept that "a contract or transaction involving attorneys may be declared unenforceable for violation of the Rules of Professional Conduct," 425 P.3d at 9, it made equally clear that California law "does not establish . . . that an attorney-services contract may be declared illegal in its entirety simply because it contains a provision that conflicts with an attorney's obligations under the Rules of Professional Conduct," *id.* at 13. In other words, the illegality of "one portion of a contract . . . does not necessarily preclude enforcement of the contract as a whole." *Id.* (citing *Moncharsh*, 832 P.2d at 899). Plaintiffs have, thus, failed to meet their burden of

persuasion on the issue of arbitrability. *See Hill*, 547 U.S. at 584.

Accordingly, because Plaintiffs do not specifically challenge the enforceability of the arbitration clause itself or claim that the agreement to arbitrate was never concluded, the Court determines that the threshold issue of arbitrability weighs against issuing injunctive relief. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (citation modified). Further, because demonstrating a likelihood of success on the merits "is a threshold inquiry and is the most important factor," Plaintiffs' failure to do so obviates the need to consider the other *Winter* factors and is sufficient to deny the Motion. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

## II. Irreparable Harm

Even if the Court had concluded that Plaintiffs were likely to succeed on the merits, the Preliminary Injunction Motion would independently fail for a separate reason: Plaintiffs have not demonstrated the likelihood of suffering irreparable harm absent injunctive relief. Plaintiffs' basic argument with respect to irreparable harm is that absent injunctive relief, they would be forced to participate in the ongoing JAMS arbitration in Delaware, thus compelling Plaintiffs to incur "the expense and time of arbitration . . . when the arbitration provision is void." Reply at 10. Concerned with facing the prospect of an adverse arbitration award, Plaintiffs are also fearful of an uphill battle in challenging that hypothetical award because of the need "to hire legal counsel in Delaware at great expense" to appeal an award that will be tough to defeat. *Id.*

When addressing this argument in relation to Plaintiffs' request for a temporary restraining order, the Court once before expressed skepticism. *See* ECF No. 5 at 6–7. Noting that "the cost of defending an arbitration is typically not adequate to yield irreparable harm for purposes of obtaining temporary injunctive relief," the Court concluded that Plaintiffs had not demonstrated the likelihood of irreparable harm by the mere virtue of being hailed into a JAMS arbitration. *Id.* at 6 (citing *Jones v. Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO*, No. CV13-3015-GHK (JPRx),

2013 WL 5539291, at *4 (C.D. Cal. July 24, 2013)). That conclusion, the Court continued, remained equally durable despite the "possibility that a federal court may grant more favorable relief than that of an arbitrator," particularly when emergency relief procedures remained available in the alternative arbitration venue. *Id.* at 7 (first citing *Smart Techs. ULC v. Rapt Touch Ireland Ltd*, 197 F. Supp. 3d 1204, 1205 (N.D. Cal. 2016); and then citing *T-Mobile USA Inc. v. Verity Wireless Inc.*, No. 2:21-cv-00733-RAJ-BAT, 2021 WL 4295845, at *1 (W.D. Wash. July 22, 2021)). In Reply, Plaintiffs cite no authority supporting the proposition that defending against the ongoing JAMS arbitration constitutes irreparable harm for purposes of obtaining emergency injunctive relief in federal court, and indeed, Plaintiffs concede that they may freely defend themselves in the JAMS arbitration. *See* Reply at 10. The Court, thus, cannot conclude that Plaintiffs have no adequate remedy at law, which is a necessary condition for awarding injunctive relief. *See, e.g.*, *Oakberry SD UTC, LLC v. Oakberry Acai, Inc.*, No. 3:23-cv-01883-BEN-MSB, 2023 WL 7508163, at *3 (S.D. Cal. Nov. 13, 2023) (declining to find irreparable harm in the context of a parallel arbitration proceeding where the party seeking injunctive relief could pursue vacatur of the award (citing *Stanchart Secs. Int'l, Inc. v. Gavaldon*, No. 12cv2522-LAB (MDD), 2012 WL 5471933, at *2 (Nov. 9, 2012))). The Court, therefore, finds that Plaintiffs have not overcome their burden of making "a clear showing that [they are] entitled to" the "extraordinary remedy" of injunctive relief. *See Winter*, 555 U.S. at 22.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) **WITHOUT PREJUDICE**. Accordingly, the hearing set for September 25, 2025, will be vacated in its entirety.

**IT IS SO ORDERED.**

Dated: September 5, 2025

Hon. Janis L. Sammartino
United States District Judge