Manuel Corrales, Jr. SBN 117647
Attorney at Law
11939 Rancho Bernardo Road, Suite 170
San Diego, CA 92128
Tel: (858) 521-0634/Fax: (858) 521-0633
Email:  mannycorrales@yahoo.com

Attorney for Plaintiff
CORRALES LAW PC, and In Pro Per

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORRALES, LAW PC., a California Professional Corporation; MANUEL CORRALES, JR., a California Resident, | Case No. 25CV1834 JLS MMP |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS** |
| vs. | |
| EQUAL ACCESS JUSTICE FUND LP, a Delaware Limited Partnership; B.E. BLANK COMPANY LP, a Delaware Limited; BEB PARTNERS LLC, a limited liability corporation; BENJAMIN E. BLANK, a Florida Resident, | Date:        September 25, 2025<br>Time:        9:00 a.m.<br>Courtroom:   4D<br>Judge:       Hon. Janis L. Sammartino |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

    I.    INTRODUCTION ...................................................................... 1

   II.    LEGAL STANDARD ............................................................... 5

        1.  Rule 12(b)(6) Motion to Dismiss for
           Failure to State a Claim ................................................... 5

        2.  Rule 12(b)(2) Motion to Dismiss for
           Lack of Personal Jurisdiction ........................................... 5

III.   ARGUMENT ........................................................................... 7

     A.  BECAUSE THE LOAN AGREEMENT IS
        VOID, THE ARBITRATION PROVISION
        CONTAINED IN THE LOAN AGREEMENT
        IS LIKEWISE UNENFORCEABLE ................................. 7

     B.  THE ARBITRATION AGREEMENT IS NOT
        GOVERNED BY THE FEDERAL ARBITRATION
        ACT ("FAA") .................................................................. 11

     C.  EVEN IF THE FAA DOES APPLY, PLAINTIFFS
        DO IN FACT CHALLENGE THE VALIDITY OF
        THE ARBITRATION AGREEMENT SEPARATE
        AND APART FROM THE LOAN AGREEMENT ........................... 12

     D.  THE SHAM GUARANTY DEFENSE BARS
        ANY CLAIM AGAINST MANUEL CORRALES,
        JR., INDIVIDUALLY ...................................................... 13

     E.  PLAINTIFFS DID NOT WAIVE THE ILLEGALITY
        OF THE LOAN AGREEMENT ........................................ 14

     F.  THE CLAIMS AGAINST THE OTHER NON-EAJF
        DEFENDANTS ARE PROPER ....................................... 15

     G.  THE INTEREST RATES UNDER THE LOAN
        AGREEMENT ARE IN VIOLATIONS OF
        CALIFORNIA USURY LAWS ....................................... 17

     H.  THE LOAN AGREEMENT IS NOT SUPPORTED
        BY ADEQUATE CONSIDERATION ............................. 18

I.    THE COURT HAS PERSONAL JURISDCITION
      OVER DEFENDANTS B.E BLANK & COMPANY,
      BEB PARTNERS AND BENJAMIN E. BLANK ............................ 19

IV.    CONCLUSION ....................................................................... 23

**TABLE OF AUTHORITIES**

Am. Express Co. v. Italian Colors Restaurant

    (2013) 570 U.S. 228, 235 ............................................................... 15

American National Bank v. A.G. Sommerville

    (1923) 191 Cal. 364, 371........................................................... 14

Atschul v. Sayble

    (1978) 83 CA3d 153, 163-164 ............................................... 8

BP West Coast Products, LLC v. Crossroad

    (S.D.Cal. 2018) 2018 WL 264120 (Judge Sammartino), at *7 ............ 13

Briskin v. Shopify, Inc.

    (9th Cir. 2025) 135 F.4th 739, 750-751 .................................... 6, 21-22

Burger King Corp. v. Rudzewicz

    (1985) 471 U.S. 462, 477 ......................................................... 6, 22

CADC/RAD Venture 2011-1 LLC v. Bradley

    (2015) 235 CA4th 775, 786-787 ............................................. 13

California State Council of Carpenters v. Superior Court

    (1970) 11 CA3d 144 .................................................................. 10

CollegeSource, Inc. v. AcademyOne, Inc.

    (9th Cir. 2011) 653 F.3d 1066, 1077 ....................................... 7, 21

Conley v. Gibson

    (1957) 355 U.S. 41, 45-46 ....................................................... 5

Cybersell, Inc. v. Cybersell, Inc.

    (9th Cir. 1997) 130 F.3d 414, 418 ........................................... 6

Data Disc, Inc. v. Systems Tech. Assocs., Inc.

    (9th Cir. 1977) 557 F.2d 1280, 1289, fn. 5 ............................. 19

Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A.

    (2nd Cir. 2013) 722 F.3d 81, 84-85 ....................................... 5

Downey Venture v. LMI Ins. Co.

    (1998) 66 CA4th 478, 511 ....................................................... 14

Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.

    (2021) 592 U.S. 351, 360 ......................................................... 22

Franklin v. Nat. C. Goldstone Agency
(1949) 33 Cal.2d 628, 632 .................................................................. 10

Gibbs v. Sequoia Capital Ops.
(4th Cir. 2020) 966 F.3d 286, 292 ...................................................... 15

Herbal Brands, Inc. v. Photoplaza, Inc.
(9th Cir. 2023) 72 F.4th 1085, 1096 .................................................... 22

Hollywood State Bank v. Wilde
(1945) 70 CA2d 103 ......................................................................... 14-15

Hooper v. Barranti
(1947) 81 CA 570, 576 ......................................................................... 9

International Shoe Co. v. Washington
(1945) 326 U.S. 310, 316 ...................................................................... 5

Loving & Evans v. Blick
(1949) 33 Cal.2d 603, 610 .................................................................... 10

Marvix Photo, Inc. v. Brand Techs., Inc.
(9th Cir. 2011) 647 F.3d 1218, 1231 .............................................. 6, 21

Mavrix Photo, Inc. v. Brand Techs., Inc.
(9th Cir 2011) 647 F.3d 1218, 1223 ..................................................... 5

McIntosh v. Mills
(2004) 121 CA4th 333, 346 ............................................................... 8-9

Moncharsh v. Heily & Blasé
(1992) 3 Cal.4th 1 ........................................................................... 7, 10

Neubauer v. Goldfarb
(2003) 108 CA4th 47, 55-57 ................................................................ 15

Newman v. Sathyavaglswaran
(9th Cir. 2002) 287 F.3d 786, 788 ........................................................ 5

Pareto v. FDIC
(9th Cir. 1998) 139 F.3d 696, 699 ........................................................ 5

People v. Toomey
(1985) 157 CA3d 1 ................................................................... 16-17, 21

People v. Witzerman

    (1972) 29 CA3d 169, 184-185 ............................................................. 21

Rent-A-Center, West, Inc. v. Jackson

    (2010) 561 U.S. 63 ................................................................................. 12

Rio Properties, Inc. v. Rio International Interlink

    (9th Cir. 2002) 284 F.3d 1007, 1020 .................................................... 21

Schwarzenegger v. Fred Martin Motor Co.

    (9th Cir. 2004) 374 F.3d 797, 802 ....................................... 6, 19, 21-
    22

Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co.

    (2018) 6 Cal.5th 59 ........................................................................... 7, 10

Sher v. Johnson

    (9th Cir. 1990) 911 F.2d 1357, 1361 ..................................................... 6

Stockton Morris Plan Co. v. California Tractor & Equipment Corp.

    (1952) 112 CA2d 684, 689 ..................................................................... 9

Wells v. Comstock

    (1956) 46 Cal.2d 528, 532 ............................................................... 14-15

World-Wide Volkswagen Corp. v. Woodson

    (1980) 444 U.S. 286, 291 ....................................................................... 5

WRI Opportunity Loans II LLC v. Cooper

    (2007) 154 CA4th 525, 533 .................................................................. 15

Zippo Mfg. Co. v. Zippo Dot Com, Inc.

    (W.D.Pa. 1997) 952 F.Supp. 1119, 1124 .............................................. 6


**OTHER AUTHORITIES**

1 Witkins, Summary of Cal. Law (10th ed. 2005) ............................................. 9, 14

9 U.S.C. §2 ................................................................................................. 11-12

Cal. Bus. & Prof. Code §17200 ....................................................... 15-16, 21

CC §1550 ............................................................................................................ 9

CC §1577 .................................................................................. 12

CC §1608 .............................................................................. 9, 11

CC §1689 .................................................................................. 12

FRCP 12(b)(6).......................................................................... 5

Plaintiffs CORRALES LAW PC ("CLPC") and MANUEL CORRALES, JR., ("Corrales") submit the following Memorandum of Points and Authorities in Opposition to Defendants EQUAL ACCESS JUSTICE FUND LP ("EAJF"), B.E. BLANK & COMPANY LP ("BEBC"), BEB PARTNERS LLC ("BEBP"), and BENJAMIN E. BLANK ("Blank") Motion to Dismiss Plaintiffs' Complaint.

## I.

## INTRODUCTION

Plaintiffs seek declaratory and injunctive relief against Defendants enjoining them from pursuing binding arbitration to collect over $1 million from Plaintiffs based on an illegal legal fee sharing agreement for a purported loan. The fee sharing agreement is void against public policy in violation of California State Bar rules. In addition, the money Defendants claim is owed is based on a non-recourse money advance and lien from another company which was never owed, because Corrales lost that case. Defendants mistakenly paid that lien and are attempting to collect it against Plaintiffs.

In August of 2021, Corrales, a San Diego lawyer, sought funding for his law practice from Defendant Benjamin Blank, the owner of Defendant B.E. Blank & Company, based on a referral from another company. **Corrales attended a Zoom call with Benjamin Blank and his associates at his company. Corrales was in California and Mr. Blank was in Florida. Mr. Blank stated that his company loans money to lawyers throughout the country, including lawyers in California**. Mr. Blank was drawn by the fact that Corrales had a claim for recovery of his fees in excess of $5.9 million from a California Indian tribe he had represented for almost 13 years. However, Mr. Blank and his company stated that they could not loan money directly to Corrales, but that the loan would need to be made to a professional corporation that they directed he set up for the loan. This was Plaintiff CLPC, which Corrales set up at Defendant Blank and his company's direction.

In addition, Blank and his company required that Corrales' law corporation, CLPC, agree to share 50% of CLPC's attorney's fees on other cases Corrales was handling which was to be used to pay down the loan, in addition to a high interest rate. Plaintiffs signed a Loan Agreement with Bank and his companies on August 16, 2021. (Ex. "1" to Complaint – "Loan Agreement"). The Loan Agreement contains a confidential

clause designed to hide Defendants' illegal fee sharing arrangement. In addition, a subsequent amendment to the Loan Agreement to construe the Loan Agreement as not a fee sharing agreement so as to avoid violating California State Bar Rules violates public policy and is therefore void.

Corrales requested funding for $200,000, but Blank and his company told Corrales that the previous funding company, U.S. Claims, also out of Florida, had filed a U.C.C. lien with the California Secretary of State on <u>non-recourse</u> funding U.S. Claims had purportedly advanced to Corrales showing an accrued amount of $518,650. Unbeknownst to Corrales, the U.C.C lien was illegal or improper, because U.C.C. lien filings only apply to <u>loan</u> debts, and the U.S. Claims' non-recourse funding agreement states that its funding to Corrales was <u>not</u> a loan. Moreover, U.S. Claims had no lien, because the funding U.S. Claims advanced to Corrales was for his Tribal lawsuit and was non-recourse in nature. (Ex. "4" to Complaint – U.S. Claims' payoff letter referencing the lien pertained only to the California Valley Miwok Tribe case). The U.S. Claims funding lien applied only to this Tribal case as shown in its Disclosure Statement. (Ex. "2," page 3 of Disclosure Statement). If Corrales did not prevail on that Tribal lawsuit, he would owe U.S. Claims nothing. In fact, Corrales lost that case in December 2018 (Ex."2" to Complaint) and therefore owed U.S. Claims nothing on the $200,000.00 it advanced in May 2018, which U.S. Claims asserts grew to $518,650.00 by August 2021. U.S. Claims advanced $200,350.00 to Corrales on May 17, 2018, on a case in which he was seeking recovery of money for the California Valley Miwok Tribe ("Miwok Tribe"). The Miwok Tribe case was the only case identified in the U.S. Claims May 17, 2018, non-recourse funding agreement. Under the non-recourse funding agreement with U.S. Claims, the amount owed would increase approximately $100,000 per year. Thus, at the time Plaintiffs entered into the Loan Agreement with Defendants, the amount of the U.S. Claims' purported lien would have been around $518,650.00. The May 17, 2018, U.S. Claims funding agreement provides in part:

> "[Corrales] agrees and sells and assigns to USC and USC hereby agrees to purchase [Corrales'] entire right, title and interest in, to and under a portion of the Proceeds as described in the Disclosure Statement **at the instant such Proceeds come into being by virtue of a judgment, settlement, verdict or**

**other disposition** of the Litigation or when the proceeds are paid to [Corrales]." (Emphasis added).

(Ex. "2" to Complaint, page 1, Section 1.b. of U.S. Claims "purchase, Sale, Assignment & Equitable Lien Agreement"). Since Corrales lost the case, he had no obligation to reimburse U.S. Claims. Despite this, U.S. Claims refused to remove its UCC lien it had filed on May 17, 2018. Both U.S. Claims and the Defendants knew that the UCC lien was invalid, yet the Defendants claimed they paid it anyway and that the Plaintiffs owed them for this purported pay off. Defendants essentially resurrected the invalid and unenforceable U.S. Claims lien and created an obligation where none existed. By Defendants' own negligence and mistake, they paid off the non-collectable U.S. Claims' lien and made it a new loan with Corrales. No consideration existed for this obligation.

In addition, the $518,650.00 U.S. Claims U.C.C. lien Defendant Blank paid was a personal non-recourse obligation of Corrales _personally_. It was not an obligation of Plaintiff CLPC. As a result, Plaintiff CLPC received no benefit from such payment.

Prior to signing the August 16, 2025, Loan Agreement, CLPC and Defendant BEBC (Blank Company) signed a "Term Sheet" summarizing the basic core terms of the Loan Agreement. **The term sheet was sent to Corrales directly from Benjamin Blank and Corrales signed it and sent it back to Mr. Blank**. In the term sheet, Mr. Blank and his company, BEBC, for the first time disclosed that Defendant "EAJF" would be the "financier" of the loan. The Term Sheet specifically provided that:

> "The law firm [CLPC] will pay the Financier [EAJF] a minimum of 50% of the attorney's fees and reimbursed expenses received on encumbered legal matters until the principal and interest of the credit facility [$700,000 loan] are fully repaid."

(Ex. "3" to Complaint, page 2 of "Term Sheet," dated August 10, 2021). This provision was directly and indirectly incorporated into the Loan Agreement. For example, the Loan Agreement states:

> "The Borrower [CLPC] unconditionally agrees to repay to the Lender [EAJF] on the tenth (10th) day after the end of each calendar month … an amount on each such date equal to fifty percent (50%) … of the Law Firm Proceeds …."

---

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS    3

(Page 11 of Loan Agreement). The term "Law Firm Proceeds" in the Loan Agreement "means all funds and other property or value received directly or indirectly by or on behalf of the Borrower or an Affiliate (and not the client's share) on account of … any and all gross, pre-tax monetary awards, damages, recoveries, judgments or other property or value awarded to or recovered by or on behalf of (or reduced to a debt owed to) the client on account or as a result or by virtue (directly or indirectly) of a Case, whether by negotiation, arbitration, mediation, diplomatic efforts, lawsuit, settlement or otherwise … , and any and all other gross revenues received by Borrower in connection with its provision of legal services, including but not limited to services rendered in connection with litigation, transactional or consulting services and regardless of whether any such revenues were pursuant to a contingency, hourly, flat-fee, or other payment agreement … " (Page 5 of Loan Agreement). In other words, the Loan Agreement required Plaintiffs to share attorney's fees with Defendants in violation of California State Bar rules.

The term "Case" in the Loan Agreement means:

"…legal matters in which the Borrower [CLPC] or the Borrower's successor in interest is an attorney of record or co-counsel or from which the Borrower or the Borrower's successor in interest otherwise receives fees in exchange for services rendered …"

(Page 2 of Loan Agreement).

In addition, the Loan Agreement provides that Defendant EAJF shall have access to CLPC client trust account maintained in a California bank account and CLPC agreed to allow Defendant EAJF to withdraw CLPC's attorney's fees from CLPC's client trust account. (Page 35 of Loan Agreement). The purpose of this provision was to allow Defendants to collect Plaintiffs' legal fees from their clients' trust account – a clear violation of California State Bar rules.

On August 13, 2021, the parties amended the Loan Agreement to exclude hourly fees from CLPC obligation to share its legal fees with Defendants. Otherwise, CLPC was still obligated to share its legal fees with Defendants.

Accordingly, the purpose of the Loan Agreement was to require CLPC to share its legal fees with Defendants in violation of Cal. Rule Prof. Conduct 5.4(a) and thus

violated public policy.  In addition, at no time did Plaintiffs' clients agree in writing to any fee sharing agreement between Plaintiffs and Defendants with respect to their respective cases.  As a result, the Loan Agreement is void and unenforceable.

## II.

## LEGAL STANDARD

### 1.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.

Under Rule 12(b)(6), the Court accepts as true all non-conclusory, material allegations of the complaint and construes them in the light most favorable to the plaintiff. See Newman v. Sathyavaglswaran (9th Cir. 2002) 287 F.3d 786, 788.  The Court also draws all reasonable inferences from these allegations in favor of the plaintiff. See Pareto v. FDIC (9th Cir. 1998) 139 F.3d 696, 699.  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson (1957) 355 U.S. 41, 45-46.

### 2.    Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

In deciding a motion to dismiss for lack of personal jurisdiction under FRCP 12(b)(2), the court has "considerable procedural leeway."  It may (a) decide the motion on the face of the complaint; (b) decide the motion on undisputed facts established by affidavits alone; (c) permit discovery in aid of the motion; (d) conduct an evidentiary hearing on the merits; or (e) defer the matter until trial. See Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A. (2nd Cir. 2013) 722 F.3d 81, 84-85.

California's long-arm statute, CCP §410.10, provides for personal jurisdiction of non-resident defendants to the maximum extent that the Fourteenth Amendment's Due Process Clause allows. World-Wide Volkswagen Corp. v. Woodson (1980) 444 U.S. 286, 291.  For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "certain minimum contacts" within California "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Mavrix Photo, Inc. v. Brand Techs., Inc. (9th Cir 2011) 647 F.3d 1218, 1223 (quoting International Shoe Co. v. Washington (1945) 326 U.S. 310, 316).

Where the minimum contacts involve the internet or computer website activities, the Court applies the "specific personal jurisdiction" test. <u>Briskin v. Shopify, Inc</u> (9th Cir. 2025) 135 F.4th 739, 750-751.  This is a three-part test which is as follows:

> (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3)    the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

<u>Schwarzenegger v. Fred Martin Motor Co</u>. (9th Cir. 2004) 374 F.3d 797, 802.  The Plaintiff bears the burden of the first two prongs of the test.  <u>Sher v. Johnson</u> (9th Cir. 1990) 911 F.2d 1357, 1361.  If he or she fails to meet this burden, then the California courts lack specific personal jurisdiction.  If the plaintiff succeeds, then the burden shifts to the non-resident defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King Corp. v. Rudzewicz</u> (1985) 471 U.S. 462, 477.

In addressing specific personal jurisdiction involving the internet, including social media and website activities, California courts "[look] to the 'level of interactivity and commercial nature of the exchange of information that occurs on the Web site' to determine if sufficient contacts exist to warrant the exercise of jurisdiction." <u>Cybersell, Inc. v. Cybersell, Inc</u>. (9th Cir. 1997) 130 F.3d 414, 418 (quoting <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc</u>. (W.D.Pa. 1997) 952 F.Supp. 1119, 1124).  Contact with the forum state can be in the form of electronic contacts. <u>Briskin</u>, supra at 752.  However, it must be "something more" than mere passive nationwide accessibility to show express aiming at the forum state and, thus, satisfy due process. <u>Briskin</u>, supra; <u>Cybersell</u>, supra at 418.

"Where a website [ ] with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." <u>Marvix Photo, Inc. v. Brand Techs., Inc</u>. (9th Cir. 2011) 647 F.3d 1218, 1231.  A non-resident defendant that operates nationwide websites will

be held to have expressly aimed its conduct in California where it "engaged in wrongful conduct targeted at a plaintiff whom the defendant knew to be a resident of the forum state." CollegeSource, Inc. v. AcademyOne, Inc. (9th Cir. 2011) 653 F.3d 1066, 1077.

**III.**

**ARGUMENT**

**A.    BECAUSE THE LOAN AGREEMENT IS VOID, THE ARBITRATION PROVISION CONTAINED IN THE LOAN AGREEMENT IS LIKEWISE UNENFORCEABLE.**

The Defendants argue that the entire Complaint must be dismissed, because the Loan Agreement contains a valid arbitration clause.  However, this is simply placing the cart before the horse and assumes the Loan Agreement is enforceable.  It is not.

This is the same argument the Defendants made in opposition to the motion for preliminary injunction.  It should be rejected.

Defendants contend that even assuming the Loan Agreement is an illegal fee sharing agreement with a non-lawyer in violation of California State Bar rules, the arbitration provision is not otherwise affected, citing Moncharsh v. Heily & Blasé (1992) 3 Cal.4th 1, and Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co. (2018) 6 Cal.5th 59.  This contention is without merit and misconstrues California law.

The Loan Agreement is illegal and void.  It clearly requires Plaintiffs to share their attorney's fees with non-lawyers, contrary to Defendants' assertions.  It requires Plaintiff CLPC, a law corporation, to share 50% of its attorney's fees collected from its clients, and Plaintiff Corrales, an attorney, to guarantee that fee-sharing arrangement, contrary to California State Bar rules prohibiting a lawyer to share fees with a nonlawyer or a nonlawyer entity. (Page 11 of Loan Agreement).  The Loan Agreement defines "Law Firm Proceeds" that Plaintiffs are to pay under the Loan Agreement as "gross revenues received by Borrower in connection with its legal services," including "services rendered in connection with litigation" pursuant to a contingency, hourly, flat-fee, or other payment agreement …" (Page 5 of Loan Agreement).  Indeed, the "Term Sheet" summarizing the basic core terms drafted by Defendant Benjamin Blank stated:

> "The law firm [CLPC] will pay the Financier [EAJF] a minimum of **50% of the attorney's fees** and reimbursed expenses received on encumbered legal

matters until the principal and interest of the credit facility [$700,000 loan] are fully repaid." (Emphasis added).

(Ex. "3" to Complaint, page 2 of "term Sheet," dated August 10, 2021).

This cannot be anything other than attorney's fees, no matter how much Defendants try to downplay it in their opposition papers. Indeed, the Loan Agreement requires that the Defendants be given access to Plaintiff CLPC's client trust account, so that it may withdraw Plaintiff CLPC's fees directly from its client trust account. (Page 35 of Loan Agreement). This is a separate violation of the California State Bar rules but shows that the intent and purpose of the Loan Agreement was to share Plaintiffs' attorney fees in violation of California State Bar Rules. Cal. Rules of Prof. Conduct 5.4(a). Notably, the attached emails from Defendant B.E. Blank & Company show that Defendant B.E. Blank & Company was illegally seeking to collect these fees from Plaintiff CLPC together with Defendant EAJF under a joint and collective scheme. (Decl. Corrales Reply, Ex. "1" and "2"). The Loan Agreement also contains a "confidentiality" clause designed to hide this illegal fee sharing arrangement. (Page 45). Accordingly, there is overwhelming evidence that the Loan Agreement was in fact an <u>illegal</u> fee sharing agreement between a California lawyer and nonlawyers and thus void as against public policy.

Under California law, the State Bar Rules of Professional Conduct, including the prohibition of a lawyer sharing a fee with a non-lawyer, "are not only ethical standards to guide the conduct of members of the Bar; but they also serve as an expression of public policy to protect the public." <u>Atschul v. Sayble</u> (1978) 83 CA3d 153, 163-164. As a result, the subject Loan Agreement which requires Plaintiffs as California lawyers to share their fees with the Defendant EAJF, and indirectly with the Blank companies, all of whom are non-lawyers, is an illegal and unenforceable contract in violation of public policy. <u>See</u> <u>McIntosh v. Mills</u> (2004) 121 CA4th 333, 346 (fee-sharing agreement between lawyer and non-lawyer private investigator was illegal, because it violated State Bar Rules and was against public policy).

There is no legal basis to ignore the illegality of the entire Loan Agreement and separate out the arbitration provision.  Under California law, the arbitration provision is void if the entire Loan Agreement is illegal.  For example, CC §1608 provides:

> "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, <u>the entire contract is void</u>." (Emphasis added).

Thus, where the illegal consideration goes to the whole promise, the entire contract is illegal. 1 Witkins, Summary of Cal. Law (10th ed. 2005) Contracts, §419, page 460.  The <u>object</u> of the Loan Agreement was also unlawful, i.e., its purpose was to illegally share attorney's fees with a nonlawyer as payment for a loan with exorbitantly high interest rates, and thus violates CC §1598 which provides:

> "Where a contract has but a single object, and such <u>object is unlawful</u>, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, <u>the entire contract is void</u>." (Emphasis added).

Thus, the Loan Agreement is illegal, because it conflicts with express public policy prohibiting attorney fee sharing with non-lawyers. CC §1550 (essential elements of a contract include having a lawful purpose).  As a result, the entire Loan Agreement is <u>void</u> from its inception, including the arbitration provision. <u>See</u>, <u>e.g.</u>, <u>Stockton Morris Plan Co. v. California Tractor & Equipment Corp</u>. (1952) 112 CA2d 684, 689 (a county supervisor unlawfully bought a machine in the name of a county agency, and the Plaintiff finance company took an assignment of the installment contract from the seller. Plaintiff's action to recover amount paid for the assignment was denied, because Plaintiff knowingly participated in the illegal transaction and aided in carrying out the illegal objective); <u>McIntosh</u>, supra.  Moreover, because the illegal Loan Agreement is the <u>foundation</u> of Defendant EAJF's claims in arbitration or elsewhere if it chooses, Defendant EAJF cannot establish its claim for a share of Plaintiffs'' fees without showing that it has broken the law, and the "<u>courts will not assist it</u>, whatever its claim of justice may be upon the Plaintiffs" as Respondents in the JAMS arbitration proceeding. <u>Hooper v. Barranti</u> (1947) 81 CA 570, 576 (Plaintiff cannot rely upon an illegal transaction to establish his case); <u>Stockton Morris Plan Co</u>., supra.

The case of <u>Moncharsh</u>, supra, cited by Defendants supports Plaintiffs' position on this issue and is contrary to the Defendants' claim that the arbitration provision may still be enforced notwithstanding the illegality of the Loan Agreement as a whole. As the court in <u>Moncharsh</u>, supra, observed:

> If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement. Thus, if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether. (Citing authorities).

3 Cal.4th at 29. In <u>California State Council of Carpenters v. Superior Court</u> (1970) 11 CA3d 144, cited in <u>Moncharsh</u>, supra, the Court, likewise observed:

> Our courts have held that the basis of the arbitral authority is a legal contract, and that a contract wholly illegal in its inception can confer no jurisdiction on arbitrators to enforce the contract terms (Citing <u>Loving & Evans v. Blick</u> (1949) 33 Cal.2d 603, 610, and <u>Franklin v. Nat. C. Goldstone Agency</u> (1949) 33 Cal.2d 628, 632).

> In <u>Loving & Evans v. Blick</u>, supra, the court said, at page 610: "[T]he power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.] In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights…."

11 CA3d at 156-157.

The case of <u>Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing, Co.</u> (2018) 6 Cal.5th 59, also cited by Defendants, likewise does not help Defendants. It is inapposite on its facts. There, the Court refused to enforce an illegal attorney fee agreement that purported to allow the law firm to engage in concurrent representation of two clients without their written consent. It held the engagement agreement unenforceable as against public policy but left open the law firm being able to seek recovery of its fees under the equitable doctrine of quantum meruit as an alternative to contractual recovery. 6 Cal.5th at 87-88. Here, the Defendants are not seeking recovery in the JAMS arbitration of any legal fees under a quantum meruit theory. Nor can they, because they are nonlawyers and the Loan Agreement would be an illegal foundation for them to do so. They seek no recovery of loan payments under any equitable

theories as an alternative to a contractual recovery.  They seek only a percentage of Plaintiffs' attorney fees collected on litigated cases.  Thus, while California law permits lawyers to seek recovery of their legal fees on quantum meruit theories, where their fee agreement is otherwise void for violating the State Bar Rules, no such facts are present in this case.  The entire Loan Agreement is void and unenforceable, barring the Defendants as classic loan sharks from enforcing it to collect 50% of Plaintiffs' attorney's fees to pay down an illegal loan.

To this end, Defendants argument that Plaintiffs must adjudicate their claims in arbitration pursuant to the subject Loan Agreement is circular and assumes without supporting authority that the Loan Agreement is valid and enforceable.  As shown, it is not.  Accordingly, the Defendants' contention that the Loan Agreement contains a "valid and enforceable arbitration provision" must be rejected.

**B.    THE ARBITRATION AGREEMENT IS <u>NOT</u> GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA")**

In the Court's recent "Order Denying Plaintiffs' Motion for Preliminary Injunction," the Court assumed that the arbitration clause in the Loan Agreement was governed by the FAA, without explaining why.  Plaintiffs contend that the FAA does not apply to determine whether the arbitration provision is "severable from the remainder of the" Loan Agreement, and that California law applies which holds that where the entire contract is void for illegality, the arbitration clause contained therein is likewise void and unenforceable. CC§1608.

The FAA only applies to, inter alia, "a contract evidencing a **<u>transaction involving commerce</u>** …" 9 U.S.C. §2.  Here, the arbitration clause in the Loan Agreement makes no mention of the FAA, that the parties agreed the FAA would apply, or that the subject Loan Agreement is a "transaction involving commerce."  Indeed, the allegations in the Complaint do not describe any transaction involving commerce.  The Loan Agreement does not require Corrales to provide services across state lines or engage in any transaction outside of California.  As a result, the FAA does not apply.

//

//

//

**C.    EVEN IF THE FAA DOES APPLY, PLAINTIFFS DO IN FACT CHALLENGE THE VALIDITY OF THE ARBITRATION AGREEMENT SEPARATE AND APART FROM THE LOAN AGREEMENT**

As explained in <u>Rent-A-Center, West, Inc. v. Jackson</u> (2010) 561 U.S. 63, there are two types of validity challenges under 9 U.S.C. §2 of the FAA: (1) the validity of the agreement to arbitrate; and (2) the challenges to the contract as a whole. <u>Jackson</u>, supra at 70.  The validity of the agreement to arbitrate is to be decided by the Court. 561 U.S. at 71.  As the Court stated in <u>Jackson</u>, supra:

> But that agreements to arbitrate are severable does not mean that they are unassailable.  If a party challenges the validity under §2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under §4.

561 U.S. at 71.  Here, Plaintiffs do in fact challenge the validity of the arbitration clause. The Complaint states in paragraph 35 that the "arbitration provision in the Loan Agreement provides that:

> "…the arbitration take place at the JAMS office in Delaware.  However, JAMS does not have a JAMS office in Delaware.  Over Plaintiffs' objections and at Defendants' urging, JAMS refused to change the location to San Diego and instead stated it will conduct arbitration with a New York or Pennsylvania arbitrator and <u>export</u> the non-Delaware arbitrator to a rented office somewhere in Delaware.  Based upon this **invalid arbitration venue provision**, Plaintiffs will be required to travel to Delaware to defend themselves against Defendants' **unlawful arbitration**." (Emphasis added).

(Complaint, para. 35).  Plaintiffs clearly challenged the validity of the arbitration provision, separate and apart from challenging the Loan Agreement.  The arbitration agreement is voidable on the grounds of mistake. CC §1577, 1689.  Moreover, the arbitration agreement provides that its "provision is a material inducement for the parties entering into [the Loan] Agreement." (Section 11.15(a) of Loan Agreement).

Plaintiffs and the Defendants were both mistaken about the fact that JAMS had an office in Delaware when in fact they did not.  Plaintiffs are entitled to rescind the arbitration agreement based on mistake.  This Court can decide this issue under <u>Jackson</u>, supra, assuming the FAA applies.  If the FAA does not apply, then the Court is

to apply California state law which provides that if the Loan Agreement as a whole is void and unenforceable, so are the other parts of the contract.

**D.    THE SHAM GUARANTY DEFENSE BARS ANY CLAIM AGAINST MANUEL CORRALES, JR., INDIVIDUALLY**

It would be futile to proceed against Manuel Corrales, Jr., individually, as a guarantor of the Loan Agreement, because the guaranty agreement he signed is a sham guarantee.  In order for EAJF to recover against Corrales as a guarantor of the Loan Agreement, Corrales "must be a true guarantor and not merely the principal debtor under a different name." BP West Coast Products, LLC v. Crossroad (S.D.Cal. 2018) 2018 WL 264120 (Judge Sammartino), at *7.  Here, Defendant Corrales Law PC was Manuel Corrales, Jr., under a different name.  There was no separation.  The Complaint alleges that Corrales set up Corrales Law PC under Defendant B.E. Bank's direction for the sole purpose of effectuating the loan, and not of his own accord. (Complaint, para. 11).  In addition, the pay off of the U.S. Claims $518,650.00 lien by Defendant B.E. Blank & Company was for an obligation incurred by Manuel Corrales, Jr., individually. (Complaint, para. 14).  As a result, the bulk of the purported obligation under the Loan Agreement was Manuel Corrales, Jr.'s personal obligation.

Accordingly, Corrales' guaranty is a sham because he "is, in reality, the principal obligor under a different name by operation of … corporate law or some other applicable legal principal." Crossroad Petroleum, Inc., supra (quoting CADC/RAD Venture 2011-1 LLC v. Bradley (2015) 235 CA4th 775, 786-787).  He is the sole owner of the corporation.  To this end, whatever arbitration award Defendant EAJF obtains in Delaware against Corrales as a guarantor, once confirmed by the Delaware state court, will necessarily need to be enforced in California against Corrales.  However, the sham guaranty defense in California will prevent collection of the judgment.  Therefore, it is futile to force Corrales to submit to arbitration.  Corrales is thus entitled to injunctive relief with respect to the arbitration agreement compelling him to arbitrate on an unenforceable claim against him based on the sham guaranty defense.  At a minimum, he is entitled to amend the Complaint to allege recission of the arbitration agreement on this and other grounds, including, but not limited to, mistake.

**E.    PLAINTIFFS DID NOT WAIVE THE ILLEGALITY OF THE LOAN AGREEMENT**

The defendants argue that Plaintiffs "expressly waived" their right to sue them for a violation of California's disciplinary rules with respect to a fee a fee sharing agreement with nonlawyers. (Def. PAs, page 2).  This is not the law.

Defendants likewise argued in opposition to the motion for a preliminary injunction that Plaintiffs waived any claim that the Loan Agreement was an illegal fee sharing agreement with a non-lawyer in violation of California State Bar rules and public policy. (Def. PAs, Opposition PI, page 8).  They point to language in the Loan Agreement to that affect that purports to provide that CLPC as the principal borrower and Corrales as the guarantor "waived" any claims that that the Loan Agreement was void and unenforceable, and "expressly waived any right to bring any private cause of action or any suit of any nature against the Lender in connection with any alleged violation of any Disciplinary Rules." (Def. PAs, Opposition PI, page 8 [Citing §5.12(a)-(b) of Loan Agreement]).  This contention is without merit and contrary to California law prohibiting the waiver of illegal contracts.

As a general rule, "[b]ecause an illegal contract is void, it cannot be ratified by any subsequent act, and no person can be estopped to deny its validity. [Citations]. Similarly, the **defense of illegality <u>cannot be waived</u>** by stipulation in the contract. [Citations]." 1 Witkins, Summary of Cal. Law (10th ed. 2005) Contracts, §432, page 473-474; <u>Wells v. Comstock</u> (1956) 46 Cal.2d 528, 532; <u>Downey Venture v. LMI Ins. Co</u>. (1998) 66 CA4th 478, 511 (quoting text in Witkins).  For example, in <u>Hollywood State Bank v. Wilde</u> (1945) 70 CA2d 103, the Court concluded that a provision in a contract to sell investments of chinchillas was an illegal securities transaction voiding the contract and rejected the defendants' claim that plaintiff waived its illegality and was therefore barred from introducing evidence of its illegality.  It then stated:

> When … the relations of the parties to a transaction are illegal and against public policy the court will deny relief based upon their contract.

70 CA2d at 112.  It then remarked that under this rule:

> [A] party may not "by stipulation at the time of the execution thereof or afterward, waive his right to urge the illegality in any action thereon instituted by the other party thereto." (quoting <u>American National Bank v. A.G. Sommerville</u> (1923) 191 Cal. 364, 371).

---

<u>Ibid</u>.  The Court further stated:

> The contracts being void by virtue of having been executed and assigned contrary to public policy and statute, all attempts to validate and vitalize them by **inserting a waiver of such defense are likewise voidable** for the same reason. (Emphasis added).

<u>Ibid</u>. at 114.

The rule against a waiver of the defense of an illegal contract also applies to guarantors. <u>Wells v. Comstock</u> (1956) 46 Cal.2d 528, 533 ("since the principal obligation of the contract is unenforceable because of illegality, the guaranty too is unenforceable"); <u>WRI Opportunity Loans II LLC v. Cooper</u> (2007) 154 CA4th 525, 533 (holding that guarantors as a matter of public policy could not waive the defense of illegal usury in loan contract).

Here both CLPC, the named borrower, and Corrales, the named guarantor under the Loan Agreement, did not and could as a matter of law waive their defense that the Loan Agreement is an illegal fee sharing agreement with non-lawyers in violation of California State Bar rules and thus void as against public policy. <u>Wells</u>, supra; <u>Wilde</u>, supra; <u>cf</u>. <u>also</u> <u>Neubauer v. Goldfarb</u> (2003) 108 CA4th 47, 55-57 (concluding that a waiver of corporate directors' and majority shareholders' fiduciary duties to minority shareholders in private close corporations is against public policy and contract provision in a buy-sell agreement purporting to effectuate such a waiver is void).  Similarly, in the context of arbitration agreement, the prospective waiver doctrine invalidates agreement that prospectively waive a party's right to pursue statutory remedies in certain circumstances. <u>See</u> <u>Am. Express Co. v. Italian Colors Restaurant</u> (2013) 570 U.S. 228, 235.  Indeed, such a waiver renders an agreement unenforceable because it violates public policy. <u>Gibbs v. Sequoia Capital Ops</u>. (4th Cir. 2020) 966 F.3d 286, 292.

## F.    THE CLAIMS AGAINST THE OTHER NON-EAJF DEFENDANTS ARE PROPER

Defendants argue that the naming of the other non-EAJF defendants is inappropriate, because they are not named parties under the Loan Agreement. (Def. PAs, page 13)  However, the Complaint clearly names them as "persons" under Cal. Bus. & Prof. Code §17200 et seq. who engaged, and are presently engaging, in an

unlawful business practice here in California, to wit: soliciting and contracting with California lawyers to share in their fees in violation of California State Bar rules. Attached to the declaration of Manuel Corrales, Jr., are various emails showing the Defendants' efforts and actions to collect a portion of Plaintiffs' attorney's fees earned on their cases.  In addition, Defendant B.E. Blank & Company LP ("BEBC") sent Plaintiffs an email dated July 3, 2025, entitled "Summer Quarterly Brief."  In this email, BEBC states that it will be, among other places, in San Diego, California, at the Rancho Bernardo Inn in October 2025, for an attorney seminar/conference called "Law-De-Gras," stating: "Our team always enjoys the opportunity to connect in-person and we hope we can sit down with you soon."  BEBC, like other funding companies, actively seeks business from lawyers at these lawyer seminars, including in California, and usually sets up a "booth" with literature and BEBC people who can sign people up for fee-sharing loans.

Moreover, the Defendants overlook secondary liability of the non-EAJF Defendants for violations of California Unfair Business Practice statute, Cal. Bus. Prof. Code §§17200 and 17500.  In <u>People v. Toomey</u> (1985) 157 CA3d 1, the California Supreme Court held that a corporate president and chief operating officer of the corporation could be secondarily liable for aiding and abetting in participating in the company's wrongful and misleading solicitations.  The Court stated: "His position in the corporation and operation of the business subjects him to liability for misleading solicitations made by his employees." <u>Toomey</u>, supra at 15.  However, a defendant's secondary liability as a corporate officer for unfair or unlawful business practices must be based on his or her actual participation, and not just on corporate rank alone. <u>Toomey</u>, supra at 15.  As explained in <u>Toomey</u>, supra:

> But if the evidence establishes defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal, liability under sections 17200 and 17500 can be imposed. (Citations)…
>
> And it is settled that a managing officer of a corporation with control over the operation of the business is personally responsible for acts of subordinates done in the normal course of business. (Citations)…

Toomey was the president and operating officer of Holiday. He orchestrated all aspects of the business. Overwhelming evidence shows that hen prepared the solicitation scripts, determined the content of coupon packages to be sold and directed the refund policy which the company followed. In sum, Toomey had unbridled control over the practices which were found violative of sections 17200 and 17500. His position in the corporation and operation of the business subjects him to liability for misleading solicitations made by his employees.

157 CA2d at 15. For the same reasons, Defendant Benjamin Blank can be personally liable for aiding and abetting his fellow subordinates in violating California law prohibiting fee sharing with non-lawyers. He actively participated in the application and follow up process in getting Corrales to sign the Loan Agreement, as explained herein.

As to Defendant BEB Partners LLC, the definition of "person" under Bus. & Prof. Code §17201 is broad, and includes "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Thus, Defendant BEB Partners can be liable for aiding and abetting.

Defendant EAJF is nothing more than a sham entity used by the non-EAJF entities controlled by Benjamin Blank to fund California litigation lawyers in exchange for a percentage of their attorney fees. The attached emails, website pages and newsletter from the Blank company confirm this.

## G.    THE INTEREST RATES UNDER THE LOAN AGREEMENT ARE IN VIOLATIONS OF CALIFORNIA USUARY LAWS

Defendants argue that the Loan Agreement cannot be void for violation of usury laws, because under Delaware law "there are no limits on interest rates for loans over $100,000." (Def. PAs, page 18). However, this assumes that the Loan Agreement is valid, which if it is then Delaware law applies. The contract was entered into in California and the property Defendants seek to acquire, i.e., Plaintiffs' fees earned are in California. Since neither Defendant EAJF nor Defendant BEBC (B.E. Blank Company) are a licensed bank or lending institution in California, none of the usury law exemptions apply to them. They are subject to California's usury laws charging interest on loans for other than personal, family, or household purposes, i.e., the higher of (1) 10% or (2) 5% plus the Federal Reserve Bank of San Francisco's rate on the 25th

day of the month preceding the earlier of the date the contract was contracted for or was executed. Cal. Constitution, Article XV, §1.

Here, the interest rate charged under the Loan Agreement exceed California' usury law.  Nowhere in the Loan Agreement does it state what interest rate is being charged. (See §2.2 of Loan Agreement: "Each Loan shall bear interest at a rate per annum equal to the Interest Rate from the Closing Date …").  It is unclear how Defendants calculated interest on the loan, but it clearly exceeds 10% per annum.  At 10% per annum for three years, the accrued interest on the $600,000 claimed loan would be $60,000 per year or $180,000 for three years.  Yet, Defendant EAJF alleges in its Complaint in arbitration that the amount owed is $1,273,224.82 (page 6 of Arbitration Complaint), which amounts to $673,224.80 in claimed accrued interest or $493,224 more than $180,000 at 10% for three years.  Since the Loan Agreement does not disclose the interest rate to be charged, by extrapolation, the amount appears to be $493,224 more than the permitted interest rate in California and thus is usury.

**H.    THE LOAN AGREEMENT IS NOT SUPPORTED BY ADEQUATE CONSIDERATION**

Defendants do not address Plaintiffs' claims of lack of consideration to support the Loan Agreement, other than to say CLPC received $77,000 from the purported $700,000 loan.  But even that misses the point.  The point is that Corrales only requested a loan for $200,000, but Defendants informed Corrales that he needed to first set up a professional corporation and borrow $700,000, so that the U.S. Claims' U.C.C. lien could be paid off.  But, as stated, US Claims had no valid U.C.C. lien, or any lien at all, because the $200,000 in funds US Claims advanced to Corrales for the Miwok Tribe case were **nonrecourse**, and, because Corrales lost that case, he had no obligation to pay back those funds.  As a result, Defendants' "pay-off" of the US Claims "lien" in the amount of $505,000 (the $200,000 with accrued interest) was not an obligation Corrales ever legally had to begin with.  Moreover, Defendants purported to pay off an obligation Corrales allegedly personally had and converted it into an obligation for CLPC.  In short, Defendants resurrected a dead nonrecourse obligation Corrales never had into an obligation for CLPC.  Since the US Claims' lien was never CLPC's legal obligation, the Loan Agreement with CLPC is not supported by valid and legal consideration.

---

**I.    THE COURT HAS PERSONAL JURISDCITION OVER DEFENDANTS B.E BLANK & COMPANY, BEB PARTNERS AND BENJAMIN E. BLANK**

The Defendants argue that the Court has no personal jurisdiction "over any Defendant who was not a party to the Loan Agreement," (Def. PAs, page 10), i.e., over non-EAJF Defendants B.E. Blank & Company LP, BEB Partners LLC, and Benjamin E. Blank.  They contend that there are no allegations that these Defendants either purposefully directed their activities in California or performed some act in California, and that there are no allegations that the claim arises out of or relates to activities in California, citing <u>Fred Martin Motor Co</u>., supra (three-prong test for analyzing specific personal jurisdiction).  These contentions are without merit and ignore the fact that the Court looks beyond the pleadings in determining personal jurisdiction under Rule 12(b)(2). <u>Data Disc, Inc. v. Systems Tech. Assocs., Inc</u> (9th Cir. 1977) 557 F.2d 1280, 1289, fn. 5.

The evidence attached to the Declaration of Manuel Corrales, Jr., shows that these Defendants purposefully directed their efforts and contacts with Corrales, a California resident, and other California residents.  For example, the following chart which Defendant B.E. Blank & Company LP posted on social media shows that Defendant BEBC's electronic contacts were more than passive but were purposefully directed at California attorneys.



In this chart, Defendant BEBC clearly states that it does business in California as part of its "national reach" in partnering "with more than 100 law firms in more than 30 states" to leverage their "national network to deliver [their] best thinking and drive positive change." (Ex. "6" to Corrales Decl.).  In addition, Defendant BEBC posted on social media information intended to target lawyers, including California lawyers per its map shown in Ex. "6," that states: "We seek to <u>partner</u> with law firms that are ethical advocates for their clients and communities." (Ex. "8" to Corrales Decl.).  Funding companies who are non-lawyers do not "partner" with law firms unless they seek to illegally share in attorney's fees.

Accordingly, Defendant BEBC's internet activities are sufficient to show that they are aimed expressly at California residents, and specifically at California lawyers, so as to warrant specific personal jurisdiction. <u>Briskin</u>, supra at 752.  Those internet activities are "something more" than mere passive nationwide accessibility and "something more" than passive advertising. <u>Rio Properties, Inc. v. Rio International Interlink</u> (9th Cir. 2002) 284 F.3d 1007, 1020. (rejecting non-resident defendant's argument that the sports gambling entity was merely operating a passive website because Rio Properties had alleged "something more—conduct directly targeting the forum … by running radio and print advertisements in Las Vegas"); <u>Marvix Photo</u>, supra at 1231 (holding that "where, as here, website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state"); <u>CollegeSource</u>, supra at 1077 (holding that a Pennsylvania corporation which operate nationwide websites that assisted students and educational institutions in the college transfer process and misappropriated college catalogues for its own financial purposes aimed its conduct at California because it was "alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knew to be a resident of the forum state," and therefore the California court had specific personal jurisdiction).  As a result, the Court has specific personal jurisdiction over Defendant BEBC. <u>Briskin</u>, supra at 750-751 (citing <u>Fred Martin Motor Co</u>. supra).

In addition, Defendant BEBC sent Corrales an email on July 3, 2025, stating that its team would be attending a lawyer seminar at the Rancho Bernardo Inn in San Diego California in October 2025 for purposes of networking with lawyers to drum up business.  They will most likely set up a booth and market their services to these California lawyers, as most funding companies do at lawyer seminars.

As stated above, all of the Defendants are liable for aiding and abetting in violating Cal. Bus. & Prof. Code §§17200 and 17500. <u>Toomey</u>, supra.  Their aiding and abetting activities included interacting with Corrales in California via email and by Zoom for the purpose of violating California State Bar Rule prohibiting sharing fees with non-lawyers.  Each cooperated in a common scheme to violate California law. <u>See</u> <u>People v. Witzerman</u> (1972) 29 CA3d 169, 184-185 (all of the defendants "cooperated with each

other" in advertising and sale of the particular offending service and were liable for aiding and abetting).

Accordingly, Plaintiffs have satisfied the first two prongs of the specific personal jurisdictional test under <u>Fred Martin Motor Co</u>. supra, and the burden now shifts to Defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King Corp</u>., supra.

The principles governing the exercise of jurisdiction over an out-of-state party "derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'" <u>Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct</u>. (2021) 592 U.S. 351, 360. Consistent with these values, the 9th Circuit has developed a seven-factor balancing test to determine the reasonableness of asserting personal jurisdiction. They are as follows:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

<u>Briskin</u>, supra at 761 (citing <u>Herbal Brands, Inc. v. Photoplaza, Inc</u>. (9th Cir. 2023) 72 F.4[th] 1085, 1096). However, Defendants do not argue any of these factors to determine reasonableness of asserting personal jurisdiction. (<u>See</u> Def, PAs, page 12). They do not argue that it would be burdensome to defend this case in California, that jurisdiction here would create a conflict with Delaware, that California lacks an interest in the enforcement of laws it enacted prohibiting non-lawyers to share fees with California lawyers, or that California would not or could not provide an efficient resolution of this dispute. The Defendants merely contest the extent of their purposeful business activities in California. However, Plaintiffs have already shown that the extent of the Defendants' purposeful direction of their regular business activities, either through the internet and personal and physical contact with California lawyers in California, supports specific personal jurisdiction. Therefore, balancing the factors the 9th Circuit traditionally evaluates, the Court should conclude that the factors weigh in favor of holding that the exercise of personal jurisdiction in California is reasonable. <u>Briskin</u>, supra at 761.

Neither do the Defendants argue that it is unfair to assert jurisdiction for any reason.  And the Defendants do not argue that Plaintiffs are without a forum other than to state elsewhere in their motion papers that Plaintiffs must resolve their dispute in arbitration in Delaware.  However, this ignores the point that the arbitration clause is unenforceable because the Loan Agreement is void.  In any event, the availability of a forum in Delaware does not outweigh the other factors showing that jurisdiction in California is not unfair.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Defendants' motion to dismiss should be denied.

DATED: September 10, 2025        MANUEL CORRALES, JR., ALC

                          *s/ Manuel Corrales, Jr.*
                          Manuel Corrales, Jr., Esq.
                          Attorney for Plaintiff
                          CORRALES LAW PC, and In Pro Per

*Corrales Law PC, et al. v. Equal Access Justice Fund LP*
Case No. 25CV1834 JLS MMP

## <u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

    I, the undersigned, whose address is 11939 Rancho Bernardo Road, Suite 170, San Diego, California 92128, certify:

    That I am, and at all times hereinafter mentioned was, more than 18 years of age and not a party to this action;

    That on September 10, 2025, I served the within:  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS** on all interested parties in said action:  **SEE ATTACHED SERVICE LIST**

[ ]    (VIA U.S. MAIL or ~~UPS OVERNIGHT~~)  I placed [ ] the original [] a true copy thereof enclosed in a sealed envelope(s) addressed as stated on the attached mailing list and placing such envelope(s) with first class postage fees, thereon fully prepaid, in the United States Mail at San Diego on this date following ordinary business practices.

[ ]    (BY CERTIFIED MAIL)  I placed [ ] the original [ ] a true copy thereof enclosed in a sealed envelope(s) addressed as stated on the attached mailing list and placing such envelope(s), certified mail, return receipt requested postage thereon fully prepaid, in the United States Mail at San Diego on this date following ordinary business practices.

[X]    (BY ELECTRONIC TRANSMISSION)  I transmitted a true copy thereof via electronic transmission on all interested parties to the action for immediate delivery to SEE ATTACHED SERVICE LIST.

[ ]    (PERSONAL SERVICE) Personally served/Delivered to the addressed stated on the attached mailing list via DLS Attorney Service.

    I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated: September 10, 2025                                */s/ Carianne Steinman*
                                                Carianne Steinman

**Service List**

1.      Joseph Lehnert
        Stephanie Scott
        Keating Muething & Klekamp LLP
        One East Fourth St., Suite 1400
        Cincinnati, Ohio 45202
        Phone : (513) 639-3964 Fax : (523) 579-6457
        Email : sscott@kmklaw.com
        Email : jlehnert@kmklaw.com

   *Attorney for Defendants Equal Access Justice Fund LP*