1  DARRIN M. MENEZES (SBN 202729)
2  **weintraub tobin** chediak coleman grodin
   LAW CORPORATION
3  400 Capitol Mall, 11th Floor
   Sacramento, California 95814
4  Telephone:  916.558.6000
   Facsimile:  916.446.1611
5  Email:       dmenezes@weintraub.com

6

7  JOSEPH E. LEHNERT (OH SBN 089492) Pro Hac Vice (To Be Submitted)
   JASON V. STITT (OH SBN 078513) Pro Hac Vice (To Be Submitted)
8  LAURA G. RAI (OH SBN 102268) Pro Hac Vice (To Be Submitted)
9  Keating Muething & Klekamp PLL
   One East 4th Street, Suite 1400
10 Cincinnati, OH 45202
   Telephone:  (513) 579-6400
11 Facsimile:  (513) 579-6457
12 Email:       jlehnert@KMKLAW.com
                jstitt@KMKLAW.com
13

14 Attorneys for Defendants, EQUAL ACCESS JUSTICE FUND LP;
   B.E. BLANK & CO LP, BEB PARTNERS LLC, and BENJAMIN E. BLANK

15                **UNITED STATES DISTRICT COURT**

16            **SOUTHERN DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18  CORRALES LAW PC, a California Professional Corporation; MANUEL CORRALES, JR., a California Resident. | Case No.: 25CV1834 JLS MMP |
| 20 | **REPLY IN SUPPORT OF MOTION TO DISMISS** |
| 21          Plaintiffs, | |
| 22          vs. | |
| 23  EQUAL ACCESS JUSTICE FUND LP, a Delaware Limited Partnership; B.E. BLANK COMPANY LP, a Delaware Limited; BEB PARTNERS LLC, a limited liability corporation; BENJAMIN E. BLANK, a Florida Resident, | Judge:  Honorable Janis L. Sammartino |
| 25 | Complaint Filed:  July 18, 2025 |
| 28          Defendants. | |

- 1 -

REPLY IN SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION

This dispute arises out of an arms-length transaction where a practicing attorney and his law firm voluntarily entered into a Loan Agreement, requesting financing from Defendant EAJF and directing the use of the requested loan funds. When the time came to repay the loan, Plaintiffs balked. Even though a forum already exists through which Plaintiffs could lodge their new-found objections to the Loan Agreement (which were apparently absent when they were entering into the Loan Agreement and accepting funds pursuant to it), Plaintiffs have attempted to bring this parallel lawsuit against Defendants in this Court. Defendants have moved to dismiss it.

On September 5, 2025, this Court denied Plaintiffs' Motion for Preliminary Injunction, which sought to enjoin the existing arbitration proceedings through JAMS contemplated by the Loan Agreement as the proper forum for disputes between the parties. In particular, the Court found that Plaintiffs were unlikely to succeed on the merits due to "this case likely belong[ing] in arbitration." (Doc. 17, PageID# 689.)

Nothing in Plaintiffs' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Dismiss moves the needle on the merits of their Complaint. This case still ought to be in arbitration, rendering this Court *forum non conveniens*. The Court still lacks personal jurisdiction over the non-EAJF Defendants (B.E. Blank & Co. LP, BEB Partners LLC, and Benjamin E. Blank) and Plaintiffs have no valid claim against the non-EAJF Defendants. Furthermore, the Loan Agreement is not void. Accordingly, Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety.

## II.   ARGUMENT

### A.   The Complaint should be dismissed, because the proper forum for this dispute is in JAMS arbitration.

In denying Plaintiffs' Motion for Preliminary Injunction, the Court noted the likely propriety of JAMS arbitration as the forum within which the parties ought to

///

REPLY IN SUPPORT OF MOTION TO DISMISS

weintraub **tobin** chediak coleman grodin
law corporation

resolve conflicts over the Loan Agreement (and this Complaint from Plaintiffs is clearly a conflict over the Loan Agreement).

"In deciding whether a case is properly arbitrable, courts must generally 'determine two gateway issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.'" (Doc. 17 at PageID# 689.) The Court then determined that, in reading Sections 11.15(a)[1] and (b)[2] of the Loan Agreement together, "these two provisions unmistakably establish that the Loan Agreement contemplates mandatory JAMS arbitration as the exclusive venue for dispute resolution, with minor exceptions not relevant here." (*Id.* at PageID# 690-91.)

Then, acknowledging that Plaintiffs seek to invalidate the agreement to arbitrate between the parties by invalidating the Loan Agreement containing it, the Court said, "The issue with [this] position, as Defendants point out, is that Plaintiffs' claims are primarily challenges to the loan-related portions of the Loan Agreement, not the arbitration-related portions. As the Supreme Court has consistently held, the basis of challenge must be directed specifically to the agreement to arbitrate before the court will intervene." (*Id.* at PageID# 691 (citing *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

---

[1] "This section concerns the resolution of any controversies or claims between the parties, whether arising in contract, tort, by statute, or otherwise, including but not limited to controversies or claims that arise out of or relate to (i) this Agreement, (ii) any Loan Document, or (iii) the transactions contemplated hereby or thereby (collectively a 'Claim'). THE PARTIES IRREVOCABLY AND VOLUNTARILY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THIS AGREEMENT." (Loan Agt. at § 11.15(a).)

[2] "Any and all Claims arising out of or relating in any way to this Agreement or any other Loan Document or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement or any other Loan Document shall be submitted to final and binding arbitration before Judicial Arbitration and Mediation Services, Inc. ('JAMS')." (*Id*. at § 11.15(b).)

REPLY IN SUPPORT OF MOTION TO DISMISS

1    Plaintiffs did not "specifically challenge the enforceability of the arbitration clause
2    itself or claim that the agreement to arbitrate was never concluded." (*Id.* at PageID#
3    693.) Therefore, the Court determined that the "threshold issue of arbitrability" made
4    it unlikely that Plaintiffs would succeed on the merits. (*Id.*)

5         The relief sought in Plaintiffs' Motion for Preliminary Injunction and Complaint
6    is similar, and the arguments made in both are nearly identical (*See* Mot. for PI (Doc.
7    2) at PageID# 168 (seeking the injunction of the arbitration proceedings pending
8    resolution of the federal action on the basis of the Loan Agreement's invalidity);
9    Complaint (Doc. 1) at PageID# 12 (seeking declaratory judgment that the Loan
10   Agreement is invalid and injunctive relief enjoining its enforcement through
11   arbitration).) If this Court found that this case should be arbitrated on the basis of the
12   Motion for Preliminary Injunction, it should so find on the basis of the Complaint, as
13   well.

14        In their Opposition to Defendants' Motion to Dismiss, Plaintiffs rehash largely
15   the same arguments they presented in their briefing for their Motion for Preliminary
16   Injunction, namely, that the Loan Agreement is void, which renders the arbitration
17   provisions in the Loan Agreement void as well. (Doc. 18 at PageID# 708.) The Loan
18   Agreement is void, they say, because the repayment constitutes fee-sharing in violation
19   of California State Bar rules. But this is not a challenge to the arbitration provision, as
20   would be necessary under *Prima Paint* and its progeny, but rather, to how the loans are
21   paid back, just as was argued in the Motion for Preliminary Injunction briefing.

22        Plaintiffs' new arguments presented in their Opposition are inapposite. First,
23   they cite Cal. Code § 1598 for the proposition that the "single object" of the Loan
24   Agreement is unlawful, "the entire contract is void." But there is not a "single object"
25   for the Loan Agreement. Defendants did expect to be paid back pursuant to the terms
26   of the Loan Agreement, but Defendants also extended financing to Plaintiffs through
27   multiple different avenues (the U.S. Claims lien payoff and the direct payment to
28   Corrales Law). Therefore, Cal. Code § 1598 does not apply.

- 4 -

REPLY IN SUPPORT OF MOTION TO DISMISS

weintraub **tobin** chediak coleman grodin
law corporation

1    Plaintiffs also argue that the Federal Arbitration Act does not apply to the Loan

2  Agreement, but "California has adopted the severability doctrine [from *Prima Paint*,

3  388 U.S. at 402] and made it applicable, as a matter of state law, even to contracts that

4  do not fall under the FAA." *Bruni v. Didion*, 160 Cal.App.4th 1272, 1285 (Cal. Ct.

5  App. 2008).

6    Finally, Plaintiffs state that they "do in fact challenge the validity of the

7  arbitration agreement separate and apart from the Loan Agreement." (Doc. 18 at

8  PageID# 713.) The totality of this apparent "challenge" can be found in paragraph 35

9  of the Complaint, describing an "invalid arbitration venue provision," and an apparent

10  "mistake" regarding whether there is a JAMS office in Delaware, where the arbitration

11  is set to take place. But under California law, "[a] contract may be rescinded ***if the***

12  ***consent of the rescinding party was given by mistake.*** The party attempting to void

13  the contract as a result of mistake must also show that it would suffer material harm if

14  the agreement were enforced." *Habitat Trust for Wildlife, Inc. v. City of Rancho*

15  *Cucamonga*, 175 Cal.App.4th 1306, 1332-33 (Cal. Ct. App. 2009) (cleaned up and

16  emphasis added). Plaintiffs may argue that they did not know, or were mistaken, as to

17  whether there is a JAMS office in Delaware, but they cannot seriously argue that their

18  consent to arbitrate was based on this mistake of fact.[3]

19    The arbitration provision is enforceable and covers all substantive issues with

20  the Loan Agreement raised by Plaintiffs. Accordingly, Defendants respectfully request

21  that the Court dismiss the Complaint and allow the arbitration to proceed.

22  / / /

23  / / /

24  / / /

25  / / /

26

27  [3] For the same reasons found by the Court in its Order Denying Plaintiffs' Motion for Preliminary Injunction, Defendants also submit that arbitrating this dispute would not cause any material harm to Plaintiffs. (Doc. 17 at PageID# 693-94.)

28

*weintraub tobin chediak coleman grodin*
law corporation

- 5 -

**B.    The balance of Plaintiffs' Opposition does not rescue the Complaint from dismissal.**

In their Opposition, Plaintiffs also present challenges to the Loan Agreement and argue that the Court has personal jurisdiction over and can sue the non-EAJF Defendants on these facts. Each of these arguments is meritless.

1.    The Loan Agreement is enforceable.

a.    The Sham Guaranty Defense

Plaintiffs first argue that because Defendants could not recover against Mr. Corrales due to the sham guaranty defense, it is futile to ask him to submit to arbitration, and therefore, he is entitled to injunctive relief. To be clear, there is nothing stopping Plaintiffs from presenting a sham guaranty defense in arbitration proceedings just as they are doing in litigation. While the Loan Agreement is governed by Delaware law, Plaintiffs are permitted to proffer any arguments they want to under California law, and the arbitrator will consider them or not, as is appropriate. Given the propriety of arbitration as the forum for these disputes, it is premature to award Mr. Corrales a reprieve at this juncture.

In any event, Mr. Corrales clearly signed the Loan Agreement not only on behalf of Corrales Law PC, but also individually as Guarantor. (*See* Loan Agt., p. 50.) In doing so, he expressly guaranteed, *inter alia*, the "due and punctual payment of all present and future Obligations, including but not limited to, the due and punctual payment of principal of and interest on the Loans, and the due and punctual payment of all other Obligations now or hereafter owed by the Borrower under the Loan Documents, in each case as and when the same shall become due and payable, whether at stated maturity, by acceleration, or otherwise, according to the terms hereof and thereof . . ." (Id. at§ 9.1) The Guaranty contained in Section 9 of the Loan Agreement is valid and enforceable and fulfills the legal requirements under Delaware law. The notion that the Guaranty is a "sham" simply has no legal or factual basis whatsoever, and is without merit.

*weintraub tobin chediak coleman grodin*
law corporation

REPLY IN SUPPORT OF MOTION TO DISMISS

### b.    Waiver

Plaintiffs next argue that they could not have waived their right to sue or to claim that the Loan Agreement was an illegal fee-sharing agreement because any (alleged) illegality cannot be waived. But the fatal flaw with Plaintiffs' argument is the presumption that the Loan Agreement is at all illegal. Defendants already addressed the legality of the Loan Agreement in their Motion to Dismiss and briefing on Plaintiffs' Motion for Preliminary Injunction—the Loan Agreement is plainly not illegal. (Opp. to Mot. for PI (Doc. 13) at § IV.B.1.b [PageID# 395-400]; Mot. to Dismiss (Doc. 15-1) at § IV.C.3 [PageID# 639-44].)

Plaintiffs merely attempt to confuse the issues by framing Defendants' position as one endorsing the waiver of actual illegality. Again, there is no illegality. On the contrary, Defendants maintain that the Loan Agreement validly evidences a loan and financing agreement. And in that very Loan Agreement, Plaintiffs already admitted as such. (*See* Loan Agr. § 2.8(a) ("this Agreement and all the Loan Documents evidence a loan and financing agreement wherein at the Borrower's request the Lender is providing financing to the Borrower, and the Borrower represents to the Lender that the contemplated transactions do not constitute in any manner a fee sharing agreement between the Lender and the Borrower with respect to any specific individual Case.").) Moreover, it is actually EAJF who relies upon the representations and warranties of Corrales Law in connection with the legality of making the loan, including that the Loan Agreement and all Loan Documents "comply with all applicable Disciplinary Rules." (Loan Agr., § 5.12(a).) Plaintiffs simply cannot now assert and should be estopped from asserting any claims with respect to the enforceability of the Loan Agreement and the conduct of Defendants in connection with the loan.

### c.    Interest Rates

As previously explained in Defendants' Opposition to Motion for Preliminary Injunction and their Motion to Dismiss, the interest rates in the Loan Agreement are not usurious under Delaware law. (Opp. to Mot. for PI (Doc. 13) at § IV.B.1.b.2

REPLY IN SUPPORT OF MOTION TO DISMISS

1  [PageID# 399]; Mot. to Dismiss (Doc. 15-1) at § IV.C.3.b [PageID# 641].) Plaintiffs

2  maintain that the interest rates are, in fact, usurious under California law. Again, the

3  arbitrator is fully capable of determining what substantive law is appropriate in

4  assessing this dispute. But the lender, EAJF, is an entity organized under Delaware

5  law, meaning there is a reasonable basis for applying Delaware law to disputes arising

6  from or related to the Loan Agreement, and the difference between the two states over

7  interest rates does not rise to the level of a difference in fundamental policy. *Nedlloyd*

8  *Lines B.V. v. Superior Ct.*, 3 Cal.4th 459, 465 (Cal. 1992). Under California choice-of-

9  law standards, then, the parties' selection of Delaware law may be honored. The subject

10  interest rates are valid under Delaware law.

### d.    Consideration

12      Plaintiffs also argue that the Loan Agreement is not supported by adequate

13  consideration, arguing that Plaintiffs never had any obligation as to the U.S. Claims

14  lien. First and foremost, EAJF disbursed $505,000 to pay off the U.S. Claims lien *at*

15  *Corrales Law's direction*, which was the bargain it struck to be in a position to pledge

16  a first lien to EAJF in all collateral in connection with the Loan Agreement. But

17  Plaintiffs also disingenuously wave away the $77,000 directly deposited into an

18  account for Corrales Law.

19      "The law will not weigh the quantum of consideration, and so long as it is

20  something of real value in the eye of the law"—and $77,000 is unquestionably

21  something of real value—it is sufficient. "The slightest consideration is sufficient to

22  support the most onerous obligation; the inadequacy . . . is for the parties to consider

23  at the time of making the agreement, and not for the court when it is sought to be

24  enforced." *Rice v. Brown*, 120 Cal.App.2d 578 (Cal. Ct. App. 1953) (quoting 17 C.J.S.

25  Contracts, § 127, page 474). In other words, Plaintiffs unquestionably got something

26  out of this bargain—payoff of the U.S. Claims lien, and a direct payment. If Plaintiffs

27  thought this would be inadequate, the time to consider that would have been before

28  entering into the Loan Agreement.

**weintraub tobin** chediak coleman grodin
law corporation

- 8 -

2.    The Non-EAJF Defendants do not belong in this litigation.

Plaintiffs finally argue that their claims against the non-EAJF Defendants are appropriate, and the Court has personal jurisdiction over these non-EAJF Defendants. The former addresses an argument by Defendants under Rule 12(b)(6), and the latter under Rule 12(b)(2).

Regarding the propriety of the claims against the non-EAJF Defendants (the 12(b)(6) argument), Plaintiffs attempt to bring in evidence outside of the four corners of their Complaint to shore up evidence to overcome the presumption that, under both Delaware and California law, officers and parent companies are not liable in contract or in tort for the actions of a business entity. (*See* Doc. 18 at PageID# 716-17.) But such extrinsic evidence may not be considered under Rule 12(b)(6). *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Dist. 1997) (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). Other than this extrinsic evidence, the Complaint itself only makes vague allegations of aiding and abetting, which is insufficient to survive a Motion to Dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

Regarding personal jurisdiction, even non-passive engagement with lawyers and law firms who happen to be Californians over the Internet is not enough to give this Court personal jurisdiction over the non-EAJF Defendants. *See Security Alarm Financing Enterprises, LP v. Nebel*, 200 F.Supp.3d 976, 986 (N.D. Cal. 2016) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (emphasizing that "minimum contacts" analysis requires an examination of "the defendant's contacts with the forum State itself, not the defendant's contacts with a plaintiff who resides there."). And the map proffered by Plaintiffs is hardly a damning portrayal of direct targeting of California—indeed, it indicates that B.E. Blank & Co. does business in more than half of the states in the country. Accordingly, Defendants disagree that Plaintiffs have satisfied their burden to show personal jurisdiction over the non-EAJF Defendants.

Even if they have, the factors presented by the Ninth Circuit in *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) weigh against personal jurisdiction over the

REPLY IN SUPPORT OF MOTION TO DISMISS

1   non-EAJF Defendants. Their "purposeful interjection into [California's] affairs" is

2   minimal, the "most efficient judicial resolution of the controversy" is not judicial at all,

3   but the already-pending JAMS arbitration, which would also provide Plaintiffs (who

4   may appear in arbitration remotely) with "convenient and effective relief," and provide

5   both parties with an "alternative forum." In other words, it is simply not reasonable for

6   this Court to exercise personal jurisdiction over the non-EAJF Defendants when all of

7   these issues between all parties could be fully adjudicated in the JAMS arbitration that

8   is already underway.

9   **III.    CONCLUSION**

10        For these reasons, Defendants respectfully request that this Court dismiss

11   Plaintiffs' Complaint in its entirety.

12

13   Dated:  September 18, 2025             **weintraub tobin** chediak coleman grodin
LAW CORPORATION

14

15              By:    */s/ Darrin M. Menezes*

16                        Darrin M. Menezes
Attorneys for Defendant

17                        EQUAL ACCESS JUSTICE FUND LP

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO DISMISS