UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORRALES LAW PC, a California professional corporation; MANUEL CORRALES, JR., a California resident,<br><br>Plaintiffs,<br><br>v.<br><br>EQUAL ACCESS JUSTICE FUND LP, a Delaware limited partnership, et al.,<br><br>Defendants. | Case No.: 25-CV-1834 JLS (MMP)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>(ECF No. 15) |

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint ("Mot.," ECF No. 15). Also before the Court is Plaintiffs' Opposition ("Opp'n," ECF No. 18), and Defendants' Reply in Support ("Reply," ECF No. 20). Having reviewed the Plaintiffs' Complaint ("Compl.," ECF No. 1), the Parties' briefs, the evidence, and the law, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 15).

## BACKGROUND

Pro se Plaintiff Manuel Corrales, Jr. ("Corrales") is a San Diego-based lawyer who has been representing the California Valley Miwok Tribe ("CVMT") in a number of legal disputes for over a decade. Compl. ¶¶ 11, 13. Corrales alleges that, as a result of his

longstanding representation of CVMT, he is owed several million dollars in previously earned legal fees from the Tribe that have been unrealized for various reasons. *Id.* ¶ 11. That large unrealized balance, according to Corrales, has driven interest from third-party financiers to offer Corrales loans to cover his legal expenses in exchange for a share of the proceeds. *Id.* ¶¶ 11–12.

One such third-party financier is Defendant Equal Access Justice Fund LP ("EAJF"). According to David Childers, Portfolio Manager for Defendant B.E. Blank & Co. LP ("BEBC"), EAJF "is a limited partnership . . . that extends financing to lawyers and law firms like Plaintiffs Manuel Corrales and Corrales Law P.C." ECF No. 13-1 ("Childers Decl.") ¶¶ 2, 4.[1] BEBC, for context, is a Delaware-based limited partnership, which is one of EAJF's partners.[2] *Id.* ¶¶ 3, 4.

On August 16, 2021, Corrales Law PC ("CLPC") entered into a loan agreement (the "Loan Agreement") with EAJF for the extension of a credit facility not to exceed $700,000. *See* ECF No. 2-1, Ex. A ("Agreement") at 17, 26.[3] The Loan Agreement provided for an initial advance of $600,000 from EAJF to CLPC, with additional advances available under certain conditions. *Id.* at 26. In exchange, CLPC agreed to a repayment schedule that was tied to the law firm's proceeds; each month CLPC was responsible to repay no less than 50% of its monthly proceeds, with possible escalations in the event CLPC's debt obligations grew. *Id.* at 27. CLPC also executed a Direction of Proceeds, with $505,000 of the advance directed to pay off a U.S. Claims lien, $18,000 directed to cover various service fees, and the $77,000 remainder directed to a CLPC bank account. Childers Decl. ¶¶ 11–12. Joining CLPC on the Loan Agreement as guarantor was Mr. Corrales. Agreement at 17, 62.

---

[1] The Court accepts Defendants incorporation by reference of their Opposition to the Preliminary Injunction (ECF No. 13, 13-1) including the Declaration of David Childers. Mot. at 9 n.1.

[2] Also named as Defendants are Benjamin E. Blank and BEB Partners LLC. Mr. Blank is, per Mr. Childers, a manger of BEB Partners LLC. Childers Decl. ¶¶ 5–6. BEB Partners LLC is a general partner of both EAJF and BEBC. *Id.*

[3] Pin citations refer to the CM/ECF numbers electronically stamped at the top of each page.

25-CV-1834 JLS (MMP)

The U.S. Claims lien relates to a previous, independent advance Corrales allegedly received from a firm called U.S. Claims. Compl. ¶ 13. As acknowledged in their Complaint, Plaintiffs allege that Corrales received a $200,350 advance from U.S. Claims on May 17, 2018, which was tied to a specific case in which Corrales sought recovery of funds on behalf of CVMT. *Id.* However, Plaintiffs allege that repayment of the 2018 advance was contingent upon CVMT's success in the matter to which the advance pertained. *Id.* In the event he did not prevail in the CVMT lawsuit, Corrales claims that the U.S. Claims lien should be extinguished, thus leaving him on the hook for nothing at all. *Id.*

For several reasons—including the fact that he did not prevail in the CVMT lawsuit—Plaintiffs allege that Corrales was not responsible for repaying U.S. Claims anything despite an accrued interest balance of over $500,000. *Id.* ¶ 13. Nevertheless, U.S. Claims allegedly filed a lien with the California Secretary of State in the amount of $518,650, which Defendants then paid off under the Loan Agreement. *Id.* Plaintiffs' basic contention in the instant suit is that the U.S. Claims lien was unenforceable, and in turn, Defendants wrongfully created a liability on Corrales's behalf of over $500,000 by paying off the lien. *Id.* ¶¶ 13–14. But beyond the alleged unenforceability of the lien, Plaintiffs further believe the Loan Agreement is unenforceable in its entirety for several reasons, including, *inter alia*, the Loan Agreement's contravention of the California Rules of Professional Conduct and the exorbitant interest rates applicable under the Loan Agreement. *Id.* ¶¶ 22, 25–27. That belief led Corrales to file this lawsuit on July 18, 2025, seeking a declaration of rights and injunctive relief under California's Unfair Competition Law. *See generally* Compl.

This action, however, lags an earlier-filed arbitration. From EAJF's perspective, Plaintiffs have defaulted on their repayment obligations under the Loan Agreement, the maturity date of which was August 16, 2024. Childers Decl. ¶ 15. By March 3, 2025, EAJF maintained that the Loan Agreement was enforceable, and that Plaintiffs remained jointly and severally responsible for repaying over $1.2 million. *Id.* ¶ 16. Accordingly,

25-CV-1834 JLS (MMP)

pursuant to an arbitration provision in the Loan Agreement, EAJF filed a Demand for Arbitration against Plaintiffs with JAMS, and that arbitration remains ongoing to this day. *Id.* ¶¶ 17–19.

Defendants filed the instant Motion on August 13, 2025, arguing, first, that the Complaint should be dismissed for *forum non conveniens* based on the arbitration clause, second, that the Court lacks personal jurisdiction over all Defendants—except EAJF, and third, that the Complaint fails to state a claim.  Mot. at 9.

**DISCUSSION**

Defendants argue that Plaintiff's Complaint should be dismissed on *forum non conveniens* grounds because the Loan Agreement contains valid and enforceable arbitration and forum selection provisions.  Mot. at 15.  Plaintiffs argue that the Loan Agreement is invalid and unenforceable in its entirety because (1) the Loan Agreement is an unlawful fee-sharing agreement under California Rule of Professional Conduct 5.4(a), (2) the Loan Agreement is unlawful for charging usurious interest rates that are inconspicuously scattered throughout the contract, and (3) the Loan Agreement is void and invalid for lack of consideration.  Opp'n at 14–18, 24–25.  Plaintiffs also now contend that they challenge the Arbitration Agreement itself, arguing that the Arbitration Agreement is invalid because (1) the Arbitration Agreement is not governed by the Federal Arbitration Act, and (2) the Arbitration Agreement is invalid due to mistake.  *Id.* at 18–20.

**LEGAL STANDARD**

The Ninth Circuit has previously held that motions to dismiss based on a forum selection clause are properly construed as Rule 12(b)(3) motions to dismiss for improper venue.  *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  The Supreme Court has "since instructed that whether a forum selection clause warrants dismissal is properly analyzed under the doctrine of *forum non conveniens*." *JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China) Ltd.*, 533 F. Supp. 3d 999, 1004 (D. Ore. 2021) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55–56 (2013) (finding that a Rule 12(b)(3) motion permits dismissal only where venue is wrong or

4

improper which is independent of a contractual forum selection clause)). "[F]orum selection clauses should be analyzed under the federal transfer statute, 28 U.S.C. § 1404(a), unless the moving party seeks a non-federal forum, in which case *forum non conveniens* is the appropriate doctrinal analysis." *Id.* (quoting *Milliner v. Bock Evans Fin. Couns., Ltd.*, 114 F. Supp. 3d 871, 876 (N.D. Cal. 2015)). "An arbitration provision can be construed as a forum selection clause." *Milliner*, 114 F. Supp. 3d 876 (quoting *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 837 (9th Cir. 2010)).

In applying the *forum non conveniens* analysis, the "practical result is that a forum-selection clause 'should control except in unusual cases.'" *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *Atl. Marine*, 571 U.S. at 64). The typical *forum non conveniens* analysis differs in several ways when considering a forum selection clause. *See Uy v. Pac. Life Ins. Co.*, No. SACV 23-1854-CJC (ADSx), 2023 WL 12224070, at *2 (S.D. Cal. Dec. 12, 2023). First, the plaintiff bears the burden of showing why the court should not transfer or dismiss the case to the agreed forum. *See Yei A. Sun*, 901 F.3d at 1087 (citing *Atl. Marine*, 571 U.S. at 64). Also, "[t]he plaintiff's subsequent choice of forum merits no weight." *Id.* (citation omitted). Second, the court must "deem the private-interest factors to weigh entirely in favor of the preselected forum," because they have "waived 'the right to challenge the preselected forum as inconvenient'" by agreeing to a forum-selection clause. *Cooley v. Target Corp.*, No. SA CV 20-00876-DOC-JDE, 2020 WL 7230985, at *2 (C.D. Cal. Oct. 12, 2020) (quoting *Atl. Marine*, 571 U.S. at 66).[4] The court must still consider factors related to the public interest,[5] however,

---

[4] Private interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Yei A. Sun*, 901 F.3d 1087–88 (citing *Atl. Marine*, 571 U.S. at 64, 62 n.6).

[5] Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Yei A. Sun*, 901 F.3d 1088 (citing *Atl. Marine*, 571 U.S. 64, 62 n.2).

5

"those factors will rarely defeat a transfer motion." *JPaulJones*, 333 F. Supp. 3d at 1005 (quoting *Yei A. Sun*, 901 F.3d 1088).

"'Only under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied." *Yei A. Sun*, 901 F.3d at 1088 (citing *Atl. Marine*, 571 U.S. at 62). Thus, forum selection clauses are controlling unless "the plaintiff made a strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Further, a "forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court would conclude that] the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *Bremen*, 407 U.S. at 17).

## I.     Validity of the Arbitration Agreement

The Court must first decide whether the Arbitration Agreement is valid and enforceable. In the Court's Order denying Plaintiff's Preliminary Injunction ("Order", ECF No. 17) the Court concluded that "this case likely belongs in arbitration" thus making injunctive relief improper. Order at 6. The Court agrees with its previous analysis and finds the Arbitration Agreement valid and enforceable.

In deciding whether a case is properly arbitrable, courts must generally "determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Courts generally resolve those issues by "apply[ing] ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also* 9 U.S.C. § 2. If the answer to both questions is yes, a court must

25-CV-1834 JLS (MMP)

enforce the agreement and compel arbitration. *See, e.g.*, *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Doubts regarding the scope of an agreement must be resolved in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).

"[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Under this so-called severability principle, "unless the challenge is to the arbitration [or delegation] clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150 (2024) (alteration in original) (quoting *Buckeye*, 546 U.S. at 445–46). Put differently, "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (emphasis in original).

First, regarding whether the dispute at issue is covered by the Arbitration Agreement, the Court previously concluded that Sections 11.15(a) and (b) of the Loan Agreement "unmistakably establish that the Loan Agreement contemplates mandatory JAMS arbitration as the exclusive venue for dispute resolution, with minor exceptions not relevant here." Order at 7–8. Therefore, the Court has already concluded that the Arbitration Agreement, if valid, covers the dispute at issue.

Second, regarding the validity of the Arbitration Agreement, the Court does not find it necessary to rehash Plaintiffs' arguments regarding the enforceability of the Loan Agreement in its entirety that were already addressed in its previous Order, as "the basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). The Court thus rejects Plaintiffs' arguments that the Loan Agreement is unenforceable for violations of California's ethical rules, usury interest rates, or lack of consideration. *See* Order at 8–9.

25-CV-1834 JLS (MMP)

Plaintiffs add two challenges to the Arbitration agreement itself that were not addressed in the Court's prior Order: (1) the Arbitration Agreement is not governed by the Federal Arbitration Act ("FAA"), and (2) the Arbitration Agreement is invalid due to mistake.  Opp'n at 18–20.

Plaintiffs argue that California law, rather than the FAA, applies to the Loan Agreement because the FAA only applies to "a contract evidencing a transaction involving commerce" and there is no mention of commerce in the Loan Agreement.  *Id.* at 18.  Therefore, Plaintiffs conclude that the Court's contention that Plaintiffs need to prove that the Arbitration Agreement itself is unenforceable instead of the Loan Agreement as a whole is incorrect.  *Id.*   Defendants correctly point out that "California has adopted the severability doctrine [from *Prima Paint*, 388 U.S. at 402] and made it applicable, as a matter of state law, even to contracts that do not fall under the FAA."  *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1285 (2008) (citing *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 322–24 (1983)).  Thus, Plaintiffs' argument misses the mark, and the *Prima Paint* severability principles are applicable.

Plaintiffs then attempt to argue that they did in fact challenge the Arbitration Agreement in paragraph 35 of the Complaint.  Opp'n at 19.  Plaintiffs contend that the Arbitration Agreement is an "invalid arbitration venue provision" based upon an alleged "mistake" concerning whether there is a JAMS office in Delaware, where the arbitration was set to take place.  Compl. ¶ 35.  Plaintiffs contend that both Parties were "mistaken about the fact that JAMS had an office in Delaware when in fact they did not" and based on this mistake they are entitled to rescind the Arbitration Agreement.  Opp'n at 19.  Defendants argue that Plaintiffs are not owed rescission because it is nonsensical that this mistake led to their consent to arbitrate and arbitrating this dispute would not cause any material harm to Plaintiffs.  Reply at 5.

"A contract may also be rescinded if the consent of the rescinding party was given by mistake."  *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332 (2009) (citing Cal. Civ. Code § 1689, subd. (b)(1)).  "The party attempting

to void the contract as a result of mistake must also show that it would suffer material harm if the agreement were enforced. . . ." *Id.* (citing *Guthrie v. Times-Mirror Co.*, 51 Cal. App. 3d 879, 886 (1975)); *see also Grocery Outlet, Inc. v. Naftali, Inc.*, No. 23-CV-5254-CRB, 2025 WL 436635, at *5 (N.D. Cal. Feb. 7, 2025) ("To properly rescind a contract under the doctrine of mistake, a party still must allege some form of injury or harm that would result in substantial unfairness were the contract to be enforced.") (citing *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 282 (2001)).

The Court is not convinced that the mistake over the lack of a JAMS office in Delaware induced Plaintiffs into entering into the Arbitration Agreement.  Plaintiffs contend that "[o]ver Plaintiffs' objections and at Defendants' urging, JAMS refused to change the location to San Diego," thus JAMS "will conduct arbitration with a New York or Pennsylvania arbitrator and export the non-Delaware arbitrator to a rented office somewhere in Delaware."  Compl. ¶ 35.  Plaintiffs allege that "Plaintiffs will be required to travel to Delaware to defend themselves against Defendants' unlawful arbitration."  *Id.* The Court is unpersuaded that the lack of a JAMS office in Delaware is a mistake that would have led Plaintiffs to not enter into the Arbitration Agreement had they been aware. Plaintiffs now want the arbitration to take place in San Diego, and the arbitration is still taking place in Delaware regardless of the existence of a JAMS office.  The Court is also not convinced that Plaintiffs would suffer any material harm if forced to arbitrate for the same reasons the Court found a lack of irreparable harm in its previous Order.  *See* Order at 10–11.  Further, the arbitration is already underway, and Plaintiff is free to bring, and has brought, any and all challenges to the Loan Agreement in the ongoing arbitration.  *See* Mot. at 15 n.5.  Therefore, the Court is also unpersuaded by this argument.

The Court finds that the Arbitration Agreement is valid and enforceable and will now consider whether to dismiss this case under *forum non conveniens*.

## II.    *Forum non conveniens*

As discussed above, forum-selection clauses are controlling unless "the plaintiff made a strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2)

25-CV-1834 JLS (MMP)

'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Yei A. Sun*, 901 F.3d at 1088 (quoting *Bremen*, 407 U.S. at 15).

First, as discussed above, the Arbitration Agreement is valid and enforceable, and further, Plaintiffs do not allege that the Arbitration Agreement is invalid due to fraud or overreaching. *See* Compl. ¶ 35. Second, enforcement of the Arbitration Agreement does not contravene a strong public policy of the forum in which suit is brought. On the contrary, "California has a 'strong public policy in favor of enforcing arbitration agreements.'" *Solo v. Am. Ass'n of Univ. Women*, 187 F. Supp. 3d 1151, 1157 (S.D. Cal. 2016) (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1074 (1999)). Further, reflected in the FAA are both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Center*, 561 U.S. at 67)). Third, arbitration proceedings are already underway, and there is no evidence that Plaintiffs would be "deprived of [their] day in court." *Yei A. Sun*, 901 F.3d at 1088 (quoting *Bremen*, 407 U.S. at 15).

Additionally, considering the public interest factors ("the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law"), the Court concludes that the balance of the public interest factors weighs in favor of enforcing the Arbitration Agreement. *Yei A. Sun*, 901 F.3d 1088 (citing *Atl. Marine*, 571 U.S. 64, 62 n.2). First, the arbitration is already underway in Delaware. Mot. at 17. Second, the Southern District of California's interest in this case is minimal as this is an "arms-length transaction between two business entities" and the choice of law under the Loan Agreement is Delaware. *See* Mot. at 18, Agreement at 67. Third, "Plaintiffs,

who bear the burden of showing transfer is unwarranted, have failed to address any of the public interest factors, let alone demonstrate that the factors weigh against transfer." *Cole v. Quest Diagnostics, Inc.*, 22-CV-892 JLT SKO, 2023 WL 6201702, at *4 (E.D. Cal. Sept. 22, 2023).

Therefore, the Court concludes that, under *forum non conveniens*, Plaintiffs' case is properly brought before the pending JAMS arbitral forum in Delaware.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 15) **WITHOUT LEAVE TO AMEND**.  As this concludes the litigation in this matter, the Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated:  February 5, 2026

Hon. Janis L. Sammartino
United States District Judge

25-CV-1834 JLS (MMP)